THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE ROBERTS *et al.*, Defendants-Appellants.

Fifth District No. 5—83—0538

Opinion filed May 2, 1985.

732

Randy E. Blue and Kim G. Noffke, both of State Appellate Defender's Office, of Mt. Vernon, for appellants.

Robert W. Matoush, State's Attorney, of Salem (Robert J. Biderman and Rebecca L. White, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendants, George Roberts and Charles Cannon, were convicted by a jury in the circuit court of Marion County of armed robbery. Roberts was sentenced to imprisonment for a term of 12 years, and Cannon was sentenced to imprisonment for a term of six years.

On appeal, both defendants contend that: (1) the circuit court erred in refusing to grant them a continuance to obtain the presence of an alibi witness; and (2) that the identification testimony upon which their convictions are based is insufficient to support their convictions. Further, defendant Roberts contends that he was denied his right to a speedy trial, and Cannon maintains that he was prejudiced when the trial court permitted the State to question Cannon's character witnesses about their knowledge of a prior arrest.

On April 29, 1983, and again on May 16, 1983, Roberts filed a petition for discharge pursuant to section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 103—5), claiming that he was denied the right to a speedy trial. Both petitions were denied by the circuit court.

On May 17, 1983, an affidavit in support of a motion for continuance was filed by both defendants. The affidavit recited the unavailability of an alibi witness, Charles Fischer, who allegedly was with defendants at Shorty's Disco from 5 p.m. to 8 p.m. the evening of the armed robbery for which defendants were charged. The affidavit re-

counted the issuance of both a subpoena for the testimony of Fischer and a warrant for his arrest for his failure to appear at a scheduled court appearance. The affidavit further indicated that Fischer's attorney was contacted and his aid enlisted in an effort to locate Fischer. According to the affidavit, Fischer's last known addresses in East St. Louis and Centralia were contacted, but Fischer could not be located. The trial court denied the motion for continuance, and the defendants' trial was conducted on May 18, 19, and 20, 1983.

The complainant, Warren Telford, testified that on December 23, 1982, at approximately 6:15 p.m., he was at a car wash in Centralia, washing his jeep, when two black men walked in and asked him if he wanted to contribute toward the purchase of a six-pack of beer. Telford declined, and, after a short discussion, the two men departed on foot. Telford related that approximately 15 minutes later the two men returned and again requested money. Telford stated that he reached into his jeep for a tire tool and a struggle ensued and that both men then pulled guns on him and eventually took his wallet. Telford estimated that the alleged robbery lasted between 10 and 15 minutes and that he had viewed his attackers for a total of about 30 minutes.

Telford reported the robbery to Centralia police and gave a description of his assailants. Telford said both men who attacked him were black and about 6 feet 2 inches tall. He said one of them was about 25 years old, light complexioned, had an Afro hair style and wore a purple sweatsuit jacket. The other robber was described by Telford as being about 28 years old, with a moustache and wearing a plaid waist-length coat. While at the police station, Telford looked at photographs of suspects but was unable to identify anyone.

On December 27, 1982, Telford was asked by the Centralia police to view more photographs, and at this viewing he identified photographs of the defendants. Telford stated that when he first identified pictures of the defendants, he was certain that Roberts was one of the men who robbed him and was about 80% sure that Cannon was the other. Telford identified both Roberts and Cannon at trial and indicated that he was certain that they were the individuals who had robbed him.

Defendants presented a number of witnesses whose testimony suggested that on the evening of the robbery the defendants were at Shorty's Disco. Alberta Goodwin testified that defendants and Charles Fischer left her home in Centralia between 5 and 6 p.m. on December 23, 1982, and indicated that they were going to Shorty's Disco. Kathy O'Neil Favors testified that she saw defendants at Shorty's Disco between 5 and 6 p.m. and again about 10:30 p.m. the night of the rob-

bery. Jack O'Neal, a bartender at Shorty's Disco, said he served defendants drinks between 5:30 and 7 p.m. on December 23, 1982, and did not observe them leave Shorty's Disco. Luana Meyers testified that she spoke briefly with defendants at Shorty's Disco at about 6:30 p.m. on December 23, 1982.

Cannon took the stand in his own defense. He said he was at Shorty's Disco the evening the robbery occurred from about 5 p.m. until it closed at 2 a.m. Cannon denied any involvement in the armed robbery of Telford.

Several character witnesses testified for Cannon. Willie Cox, a Centerville police officer, testified that he had known Cannon all his life and that Cannon had a good reputation for truth and veracity. On cross-examination, Officer Cox was asked whether he had heard that Cannon possessed or carried a gun and had been arrested for unlawful possession of a firearm and for burglary. Officer Cox responded negatively to all these questions except the one which asked whether he had heard that Cannon had been arrested for burglary.

Ralph Smith, Cannon's minister, indicated that Cannon had a reputation for being a peaceful, law-abiding citizen and said that Cannon had always been honest with him. On cross-examination, Smith stated that he had heard that Cannon had been arrested for burglary.

Fred Cannon, the defendant's father, testified that his son had a reputation for being peaceful and law-abiding. He too stated on cross-examination that he had heard that his son had been arrested for burglary.

■ On appeal, both defendants assert that the circuit court erred by denying their request for a continuance because of the unavailability of Charles Fischer, a potential alibi witness. We disagree.

The granting or denying of a motion for continuance to procure a witness is within the discretion of the circuit court; and the denial of such a motion is not an abuse of discretion if there is no reasonable expectation that the witness will be available in the foreseeable future. (*People v. Tyler* (1975), 28 Ill. App. 3d 538, 539-40, 328 N.E.2d 585, 587.) In the case at bar, the circuit court determined that there was no prospect for procuring the witness in the reasonably foreseeable future since, in all likelihood, the witness had purposefully absented himself from the jurisdiction to avoid prosecution in another case. We find no abuse of discretion in the instant case.

Defendants further maintain that they were not proved guilty beyond a reasonable doubt. Again, we do not agree.

■ ■ A positive identification by a single witness will support a conviction if the witness' opportunity to observe was adequate. (*Peo-*

*ple v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320; *People v. Brown* (1982), 110 Ill. App. 3d 1125, 1127, 443 N.E.2d 665, 667.) Defendants concede this point but suggest that Telford's identification was not positive. We have examined Telford's testimony and reach a contrary conclusion. Telford observed his assailants twice, once before the robbery and again during the robbery. Telford was in close proximity to his assailants and observed them for about 30 minutes. At trial, Telford indicated that he was certain that it was defendants who had robbed him. Although defendants point out certain minor discrepancies in Telford's identification testimony, we find that the discrepancies relied upon do not rise to the level of a reasonable doubt of defendant's guilt.

 █ Roberts maintains that he was denied a speedy trial and that the circuit court erred by failing to grant his motions for discharge. In this regard, the record discloses that Roberts was taken into custody on December 25, 1982, on charges of aggravated battery. On December 28, 1982, Roberts was charged with armed robbery, and a warrant for his arrest was served on him while he was in custody. On December 30, 1982, Roberts requested that the public defender be appointed to represent him, and Harold Pennock was appointed to represent both Roberts and Cannon. Mr. Pennock subsequently moved for a continuance on January 3, 1983, and the cause was continued to January 10, 1983, the court requesting Mr. Pennock to inquire as to a possible conflict arising from his representation of both defendants. Thereafter, on January 10, 1983, Mr. Pennock moved to withdraw as counsel on the grounds that no conflict existed in the representation of both defendants by one attorney and that his contract with Marion County covered only conflict cases. This motion was granted and Paul Hillis was appointed to represent both defendants on that date. On January 11, 1983, the cause was set for trial on March 1, 1983.

The relevant facts occurring subsequent to January 11, 1983, are correctly set forth in defendants' appellate brief, which states:

| | |
|---|---|
| "Hillis points out a possible conflict in representation of Roberts and Cannon and Pennock is reappointed for Cannon | 1/12/83 Trial is set for 3/1/83 |
| Motion to suppress photographic identification filed | 2/25/83 |
| Hearing on motion to suppress set for 3/7/83 due to illness of Mr. Hillis | 3/2/83 |

| | |
|---|---|
| Motion to suppress is heard; motion for severance filed and heard (Cannon); State confesses motion to sever filed by Cannon | 3/7/83 |
| Motion for severance is denied; State moves to *nolle prosequi* Cannon and court denied that motion; State advises court it will take an interlocutory appeal of the denial of motion to *nolle prosequi* Cannon; Court stays proceedings as to both defendants on its own motion; Hillis and State announce they are ready for trial with or without Cannon; Court acknowledges Roberts is not involved in the interlocutory appeal; State files Notice of Appeal | 3/8/83 |
| Interlocutory appeal dismissed on motion of the State; First Petition for Discharge on speedy trial grounds is filed | 4/29/83 |
| Hearing on petition for discharge; Court takes motion under advisement | 5/2/83 |
| Court announces denial of first petition for discharge | 5/13/83 |
| Second petition for discharge is filed, heard and denied | 5/16/83 |
| Jury trial begins | 5/18/83." |

Roberts maintains that before he was brought to trial, 131 days had elapsed for speedy-trial purposes, including the 10-day delay attributable to him because of his filing of a motion to suppress photographic identification on February 25, 1983. The State contends that Roberts is chargeable with the delay resulting from the interlocutory appeal of the circuit court's denial of the State's motion to nol-pros as to defendant Cannon. In this regard we observe that a delay chargeable to a defendant must occur as a direct result of the defendant's own actions. (*People v. Oakley* (1982), 109 Ill. App. 3d 165, 168-69, 440 N.E.2d 316, 318.) In the case at bar, Roberts took no actions on March 8, 1983, which delayed his trial. The motion to sever was Cannon's, not Robert's. It was the denial of the State's attempt to nol-

pros as to defendant Cannon which prompted the interlocutory appeal which was taken by the State. We note that the circuit court specifically noted that Roberts was not involved in the interlocutory appeal.

The State, nevertheless, asserts that Cannon and Roberts were inseparable for speedy-trial purposes because they were jointly tried. We reject this assertion. Since the right to a speedy trial is a right personal to the accused (*People v. Brame* (1955), 6 Ill. 2d 412, 413, 128 N.E.2d 911, 912), such right may not be waived because of delays occasioned by a codefendant for which the accused was not in any way responsible.

■■ ■ The State also contends that the 11-day delay from December 30, 1982, to January 10, 1983, is chargeable to Roberts. The State urges that since Roberts specifically requested that Harold Pennock be appointed to represent him, the delay caused by Pennock's subsequent withdrawal should be attributed to Roberts. A similar contention was rejected by this court in *People v. Collum* (1981), 98 Ill. App. 3d 385, 424 N.E.2d 440. In *Collum*, the public defender on his own moved to withdraw as defendant's counsel because of a potential conflict of interest. The public defender's withdrawal was neither directed by nor at the insistence of defendant. The State there urged that the delay occasioned by counsel's withdrawal may be chargeable to defendant. This court found, however, that where, as in the present case, counsel withdraws on his own initiative, any resulting delay cannot be charged to defendant. 98 Ill. App. 3d 385, 387, 424 N.E.2d 440, 442.

We therefore find that the trial court erred by denying Roberts' motions for discharge, and we reverse Roberts' conviction and order his discharge.

■■ Finally, defendant Cannon urges that the circuit court erred by allowing the State to cross-examine Cannon's character witnesses concerning their knowledge of Cannon's prior arrests. The State maintains that the issue is waived because defense counsel failed to make a timely objection at trial.

Cannon does not dispute the fact that no timely objection was made at trial but points out that the issue was raised in his motion in arrest of judgment and urges that we consider the issue under the plain-error doctrine.

We conclude that the instant case falls within the plain-error doctrine. The waiver rule may be relaxed in cases involving plain error or where the evidence is closely balanced. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282-83, 296 N.E.2d 856, 857-58.) Both these circumstances are present in the case at bar. First, the evidence is closely balanced

since it essentially amounts to the testimony of a single eyewitness against that of a defendant and numerous alibi witnesses. Moreover, our supreme court has recognized the prejudice inherent in presenting evidence of a defendant's prior offenses to the jury. (See *People v. Flynn* (1956), 8 Ill. 2d 116, 120, 133 N.E.2d 257, 259.) Since the error complained of permitted the State improperly to introduce evidence of a defendant's prior arrest, we deem the error to be of substantial magnitude to be treated as plain error.

■■ ■ The State's cross-examination of Cannon's character witnesses was improper. In Illinois, the rule is that the State is not allowed to question character witnesses regarding specific acts of misconduct. (*People v. Greeley* (1958), 14 Ill. 2d 428, 432-33, 152 N.E.2d 825, 827; *People v. Hermens* (1955), 5 Ill. 2d 277, 286, 125 N.E.2d 500, 505-06.) Furthermore, it has been held that it is prejudicial error for the State to question a character witness regarding whether defendant had ever before been arrested. (*People v. Page* (1937), 365 Ill. 524, 527-28, 6 N.E.2d 845, 847.) We conclude that the State was erroneously permitted to question Cannon's character witnesses concerning his prior arrests and that the resulting prejudice suffered by Cannon in the instant case requires reversal since the jury was allowed to consider, and possibly convict on the basis of, Cannon's prior arrests. *Cf. People v. Hunt* (1971), 132 Ill. App. 2d 314, 320, 270 N.E.2d 243, 247.

For the foregoing reasons, the judgment of the circuit court with respect to defendant Roberts is reversed and, with respect to defendant Cannon, the judgment is reversed and the cause is remanded for a new trial.

Reversed in part and defendant Roberts discharged; reversed and remanded as to defendant Cannon.

KARNS and HARRISON, JJ., concur.