357

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
ARNOLD SOLIS, Defendant-Appellee.

Second District No. 2—89—1356

Opinion filed January 8, 1991.

REINHARD, P.J., specially concurring.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and
David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office,
of counsel), for the People.

Herbert Hill, of Law Offices of Herbert W. Hill, of Aurora, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The State appeals from an order of the trial court entered December 4, 1989, wherein defendant, Arnold Solis, was discharged based on a violation of the speedy-trial provision of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 103—5(a)). We reverse and remand.

The sole issue before this court is whether the trial court abused its discretion in discharging the defendant. On the day of trial, the 117th day of the speedy-trial term, defendant's counsel sought a continuance to research a conflict of interest problem arising from defense counsel's injecting himself as a potential witness into defendant's case by interviewing a recanting identification witness. Additionally, on the day following the continuance, defense counsel obtained leave to withdraw, and defendant was granted a continuance to obtain new counsel. This continuance delayed the proceedings beyond the 120-day speedy-trial term. We conclude there was delay attributable to the defendant and, therefore, no speedy-trial violation.

Defendant was indicted in March 1989 on one count each of attempted murder, armed violence, and aggravated battery when he allegedly shot Mickey Stuart in the arm. Defendant was arrested on April 12. On April 28, Richard Petesch of the law firm of Cooper, Storm, and Petesch, entered his appearance and demanded a speedy trial on behalf of defendant.

At a pretrial conference on August 4, Assistant State's Attorney Tim O'Neil advised the court that, although Stuart had previously identified the defendant on July 27, during an interview by defendant's attorneys Petesch and Cooper, Stuart repudiated his prior identification of defendant and signed a statement to that effect. The prosecutor further explained that he had someone from the Aurora police department talk to Stuart on August 3, and Stuart informed the officer that he had been intimidated into signing the statement repudiating the identification. Because of threats, Stuart was in protective custody, O'Neil opined that defense counsel might want more time to prepare. Attorney Petesch, however, answered ready for trial. Without comment, the trial court set the matter for trial as scheduled on August 7.

On August 7, the prosecutor raised the possibility of an ethical violation if defense counsel became a witness in the case. Defense counsel acknowledged that he could be called as a material witness on either side of the case and requested a one-day continuance to further

research the issue. The court took note of the conflict and observed that defense counsel might have to withdraw from the case. The court granted defense counsel's request for continuance and noted the "term" problem. Defense counsel agreed that the delay would be attributable to defendant.

On August 8, the 118th day since defendant's arrest, defense counsel, Peter Storm, informed the court that his research indicated that his firm must withdraw from representing defendant. Attorney Storm was accompanied by attorney Giampoli, who would be making arrangements to take defendant's case. The State answered ready for trial. The trial court granted defense counsel's motion to withdraw and noted that any continuance would be attributable to defendant. The court granted defendant's motion to continue the case until August 11 after Giampoli indicated that he needed time to confer with defendant and prepare the case.

On August 11, the 121st day since defendant's arrest, the prosecutor advised the court that Giampoli informed him that defendant would be employing attorney Glen Sowa. When attorney Sowa did not appear, the case was continued to August 25. Defendant was present and agreed to this continuance. The orders entered on August 7, 8, and 11 indicate that defendant was present in open court and that each motion was attributable to defendant.

On August 25, attorney Sowa entered his appearance and asked for a continuance to prepare for trial. Defendant's motion was granted and the case continued until September 15, 1989. On defendant's motion, the case was continued to October 13 and, on that date, set for trial on December 4. Attorney Sowa represented defendant until November 3. Sowa was then permitted to withdraw, and attorney Herbert Hill was allowed to file his appearance.

On November 30, the trial court held a hearing on defendant's section 103—5(a) motion for discharge. The hearing was continued until December 4 so the court would have the opportunity to consider the case law submitted and review the transcripts. On December 4 the State conceded that, for speedy-trial purposes, there were 118 days attributable to the State, as of the originally scheduled trial date of August 7.

In its ruling discharging the defendant, the trial court noted that when the case was called for trial, the State answered ready and did nothing to delay the trial. The court also noted that defendant did not acquiesce on the record in the withdrawal of his attorneys. The court opined that the delay was attributable to defendant's attorneys, who were attempting to obtain a statement to impeach the State's wit-

ness. The court stated that, although the situation presented a unique set of facts, it did not wish to see the case tried twice. The court also observed that, if defendant's counsel (Cooper) had been allowed to remain in the case in the face of a conflict of interest and defendant were found guilty, reversible error would have resulted. However, the court believed that where defense counsel was given time to research the issue, was permitted to withdraw without defendant's acquiescence, and where defendant was given additional time to obtain another attorney, the delay was not attributable to defendant. Therefore, the court discharged defendant.

The State contends that the trial court abused its discretion in finding that the delay in the trial from August 7, 1989, was not attributable to defendant. We agree with the State for the reasons that follow.

In reaching its decision, the trial court apparently relied on *People v. Roberts* (1985), 133 Ill. App. 3d 731, and *People v. Collum* (1981), 98 Ill. App. 3d 385. In those cases, the Appellate Court for the Fifth District followed a doctrine which appears to state that when a court-appointed attorney withdraws on his own initiative due to a perceived conflict of interest, and not at the request of the defendant, any resulting delay cannot be charged to the defendant unless the withdrawal was made under circumstances from which it may be inferred that the defendant acquiesced in the delay, or in situations where the withdrawal was followed by a request that defendant's attorney be given additional time. (See, *e.g., People v. McGuire* (1984), 123 Ill. App. 3d 908, 911 (silence by defendant deemed acquiescence in withdrawal of appointed counsel for perceived conflict of interest and resulting delay where substituted counsel was granted continuance to prepare for trial); *People v. Eason* (1976), 44 Ill. App. 3d 308, 310—11 (delay occasioned by withdrawal of counsel and subsequent appointment of new counsel to which defendant acquiesced was chargeable to defendant).) We do not share the trial court's broad interpretation of *Roberts* and *Collum*, nor do we believe they are factually similar to the case at bar.

On appeal, defendant again cites *Roberts* and *Collum* in addition to *People v. Bowman* (1989), 180 Ill. App. 3d 755, in urging that there was no continuance of the trial attributable to defendant. We note, however, that the decision in *Bowman* has been recently reversed. *People v. Bowman* (1990), 138 Ill. 2d 131.

In *Bowman*, a public defender was appointed to represent defendant and made a demand for a speedy trial. Due to a conflict of interest, the public defender was allowed to withdraw. A conflict attorney

under contract with the county was appointed. Trial was set for November 23, 1987. The conflict attorney resigned his position on October 1, effective November 1. On November 1, attorney Jarrin became the conflict attorney. Due to a large caseload, Jarrin could not try the case on its scheduled date. On November 18, Jarrin had the case generally continued and stipulated that the delay would be attributable to defendant. On January 15, 1988, by letter to the chief judge, defendant attempted to claim his right to a speedy trial and to repudiate the actions of his attorney. On February 18, another attorney appeared on defendant's behalf and obtained a discharge of the defendant based on a violation of the speedy-trial provisions.

 Our supreme court applied the general rule that a client is bound by the acts or omissions of his lawyer-agent. (*Bowman*, 138 Ill. 2d at 141.) The court also found that defendant's acquiescence to Jarrin's serving as his attorney contributed to the delay of the trial. (*Bowman*, 138 Ill. 2d at 141.) The court noted that the affirmative acts of counsel cannot be separated from the defendant's own acts; thus, a party who does not promptly repudiate an attorney's act upon receiving knowledge of such an act has effectively ratified the act. (*Bowman*, 138 Ill. 2d at 141.) The court further noted that when an attorney requests or agrees to a continuance the record need not always affirmatively show he has consulted with and received the advice of the accused; such a rule would intolerably burden the trial courts. (*Bowman*, 138 Ill. 2d at 142.) The supreme court held that where the defendant had not overcome the presumption that attorney Jarrin was acting on defendant's authorization, defendant could not claim that his own action, or lack thereof, did not contribute to the delay caused by Jarrin's filing of a motion for a continuance on his behalf. (*Bowman*, 138 Ill. 2d at 143.) The court noted with approval Justice Heiple's dissent in the appellate decision (*Bowman*, 180 Ill. App. 3d at 760 (Heiple, J. dissenting)) and explained that to hold otherwise would force every trial court to inquire into every chargeable delay to determine whether an accused personally agreed to a continuance or waived his right to appear at a hearing. (*Bowman*, 138 Ill. 2d at 144.) "To affirm the appellate court's judgment might allow every accused whose attorney's actions cause the delay of a trial to escape trial and conviction through a questionable application of the speedy-trial statute." (*Bowman*, 138 Ill. 2d at 144.) Finally, the court explained that a defendant may properly be required to choose between the two constitutional rights of a speedy trial and the effective assistance of counsel. (*Bowman*, 138 Ill. 2d at 147.) The court disapproved of placing the defendant in a "no-lose" situation so that, by

merely fortuitous circumstances, a defendant would be able to exploit his constitutional right to a competent attorney but nevertheless escape all charges through a technical application of the speedy-trial statute. (*Bowman*, 138 Ill. 2d at 148.) Under the circumstances, the court concluded that granting the defendant's motion to dismiss was an abuse of discretion. *Bowman*, 138 Ill. 2d at 149.

■■ Applying the above rules and principles, we believe the trial court abused its discretion by discharging the defendant. There was no conflict of interest in representing defendant until his attorneys became witnesses by interviewing the recanting State's witness on July 27, 1989.

Defense counsel did not address the potential conflict in his representation of defendant until it was pointed out by the prosecutor. Only on the scheduled day of trial, August 7, 1989, did defense counsel acknowledge to the court that there was a potential conflict in his representation of defendant. Counsel then asked for a continuance to research the issue. On August 8, defense counsel withdrew and consented to a three-day continuance attributable to defendant so that new counsel could confer with defendant and prepare for trial. August 11 was the 121st day since defendant's arrest and was beyond the speedy-trial term. On August 4 and August 11, defendant was present in court and raised no objections to his representation or the granting of the continuance from August 7 to August 11. On August 11, defendant appears to have personally assented to a further continuance to August 25. Defendant's new attorney, Sowa, appeared and, in the presence of defendant, asked for a continuance to prepare the case for trial. Defendant voiced no objection to the continuance. Further continuances were granted to defendant until the November motion for discharge.

We determine there are several factors militating against the discharge of the defendant and hold that the delay in the trial was attributable to defendant. First, counsel's voluntary investigation and interview of the witness created a conflict which did not exist previously. This action along with counsel's later actions inured to defendant's benefit. The potential conflict was brought to the attention of the trial court only just before trial. Second, defense counsel asked for continuances on August 7 and 8, agreeing that the continuances would be attributable to defendant. Defendant personally assented to another continuance on August 11. Thus, defendant must be deemed to have acquiesced to his representation by counsel, their withdrawal, and the resulting continuances. He is bound by the acts or omissions of his attorneys. As defendant stood mute while his counsel took

actions for his benefit which resulted in delaying the trial, he should not now be allowed to complain of a speedy-trial violation. To hold otherwise would invite abuses or questionable applications of the speedy-trial provisions so that, whether inadvertent or contrived, conflicts could be created at the end of the term and the accused could escape trial on a technical application of the provisions. To the extent that the holdings of *Roberts* and *Collum* can be so broadly interpreted that a last-minute conflict of interest requiring the withdrawal of counsel can be brought to the trial court's attention just before trial so that discharge must be automatically granted, we reject such an interpretation of those cases in light of *Bowman* (138 Ill. 2d at at 144). According to *Bowman*, in an appropriate case delay due to withdrawal based upon a conflict may not be attributable to defendant, but the defendant may not be allowed to demand a speedy trial *and* effective counsel. Under *Bowman*, the defendant must choose between a speedy trial and effective counsel. In any event, we find *Roberts* and *Collum* factually inapposite to the case before us as did our supreme court in *Bowman*. 138 Ill. 2d at at 145.

For the foregoing reasons, the judgment of the circuit court of Kane County is reversed, and the cause is remanded for trial.

Reversed and remanded.

GEIGER, J., concurs.

PRESIDING JUSTICE REINHARD, specially concurring:

While I agree with the majority that the trial court erroneously granted defendant's motion for discharge based on an alleged speedy-trial violation, I write specially to set forth more precisely my own reasons for reaching that conclusion.

I believe, like the majority, that the proper analysis begins by reference to the Illinois Supreme Court's decision in *People v. Bowman* (1990), 138 Ill. 2d 131. In *Bowman*, defendant's court-appointed attorney withdrew from the case and was replaced by another attorney approximately three weeks before the date set for trial. The defendant did not object to the substitution of attorneys. Shortly before trial, the defendant's new attorney sought and was granted a continuance. (*Bowman*, 138 Ill. 2d at 135-36.) The supreme court held that, where the record did not rebut the presumption that the continuance was sought upon defendant's authoriza-

tion, the delay caused by the need for the new attorney to prepare for trial was chargeable to the defendant. (*Bowman*, 138 Ill. 2d at 140-43.) I note that the delay at issue in *Bowman* was the delay necessitated by the need for the defendant's new attorney to prepare for trial (the preparation delay). The delay between the withdrawal of the first attorney and the appointment of his successor attorney (the appointment delay) was not at issue.

Here, as in *Bowman*, defendant's attorney sought a continuance to allow him to prepare for trial, and defendant never indicated his disapproval of this request. Thus, defendant has not overcome the presumption that the delay was sought upon his authorization, and the resulting preparation delay is chargeable to defendant. The only remaining portion of the delay complained of is the appointment delay, but this delay amounted to only one day in the instant case. Even assuming, *arguendo*, that this delay is not chargeable to defendant, the total time chargeable to the State would be 119 days. This is within the statutorily prescribed time limitation.

Furthermore, I do not believe that even the one-day appointment delay is chargeable to the State. Citing the holdings in *People v. Roberts* (1985), 133 Ill. App. 3d 731, and *People v. Collum* (1981), 98 Ill. App. 3d 385, defendant argues that *none* of the delay caused by the withdrawal of a defendant's attorney because of a conflict is chargeable to a defendant. Those cases, however, arose in the context of a potential conflict of interest of the defendant's attorney. Here, on the other hand, there is no such conflict of interest. The attorney's withdrawal was made pursuant to an ethical obligation requiring him to withdraw once he realized that he might testify in the proceedings. (See Code of Professional Responsibility (107 Ill. 2d R. 5—102).) Thus, although the attorney *could* have continued to represent defendant, he withdrew so that he could testify for defendant in the proceedings. This decision was to defendant's strategic advantage, and the delay caused thereby should be chargeable to defendant.

Finally, beyond merely distinguishing *Roberts* and *Collum* from the instant case, I note that the entire rationale of those cases appears flawed. *Roberts* and *Collum* hold that, where the defendant's attorney is forced to withdraw from representing a defendant because of a conflict, the resulting delay is not chargeable to the defendant. (But see *People v. McGuire* (1984), 123 Ill. App. 3d 908, 911-12.) Just as the court in *Bowman* rejected an approach which would reward a defendant who is " 'fortunate' enough to have an appointed attorney who was overburdened" (*Bowman*, 138 Ill. 2d at

148), I question the approach taken in *Roberts* and *Collum* because it would reward those defendants who are "fortunate" enough to have an attorney who discovers that a conflict requires him to withdraw from the case. I agree with the statement in *Bowman* that a defendant cannot "have it both ways" and should not be "able to exploit his constitutional right to a competent attorney and escape all charges through the technical application of the speedy-trial statute." *Bowman*, 138 Ill. 2d at 148.

I am aware that the supreme court in *Bowman* commented favorably on the rationale of *Roberts*, but this issue was not before the court and such comments are, therefore, *dicta. (Mid-American Lines, Inc. v. Industrial Comm'n* (1980), 82 Ill. 2d 47, 59-60.) The court's definitive pronouncement on the *Roberts* rationale must await a day when that issue is squarely before the court.