NOTICE
Decision filed 10/16/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 231350-U

NO. 5-23-1350

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | Nos. 22-CF-228 |
| | ) | |
| SIMEON C. PATTERSON, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices Moore and Hackett concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's speedy-trial rights were violated where the delays attributed to defendant were caused by the need to find defendant conflict-free counsel.

¶ 2    In Jackson County case No. 22-CF-228, defendant, Simeon C. Patterson, was charged with aggravated discharge of a firearm, two counts of reckless discharge of a firearm, and one count of unlawful use of weapons by a felon. Following a jury trial, defendant was found guilty of the two counts of reckless discharge of a firearm and unlawful use of a weapon by a felon. Defendant was found not guilty of aggravated discharge of a firearm. On direct appeal, defendant raises numerous issues. Defendant contends that: (1) he was denied his statutory right to a speedy trial; (2) the trial court erred by denying his motion to sever the charge of unlawful use of weapons by a felon; (3) he was deprived of a fair trial by the State referencing "gangs" during closing argument; and (4) the

1

trial court improperly collapsed the three-step *Batson* inquiry into a single step during *voir dire*. For the following reasons, we find that defendant's statutory right to a speedy trial was violated and reverse defendant's convictions.

¶ 3                                      I. BACKGROUND

¶ 4      This recitation of the facts includes only those necessary to resolve this appeal. We will recite additional facts in the analysis section as needed to address the specific arguments of the parties.

¶ 5      In 22-CF-228, defendant was charged with aggravated discharge of a firearm (count 1), a Class 1 felony, in violation of section 24-1.2(a)(2) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.2(a)(2) (West 2020)); two counts of reckless discharge of a firearm (counts 2 and 3), Class 4 felonies, in violation of section 24-1.5(a) of the Code (*id.* § 24-1.5(a)); and unlawful use of weapons by a felon (UUWF) (count 4), a Class 3 felony, in violation of section 24-1.1(a) of the Code (*id.* § 24-1.1(a)).[1] These charges were the result of an incident that occurred in downtown Carbondale on April 30, 2022.

¶ 6      On the State's motion, defendant's case was joined and tried together with the cases involving his codefendants, Charleton Patterson (Charleton[2]) (defendant's twin brother) and Demarcus Jones (Jones). As noted above, the jury found defendant guilty of the two reckless discharge counts and the UUWF count. Defendant was found not guilty of aggravated discharge of a firearm. The court sentenced defendant to 5 years in prison on each of the reckless discharge

---

[1]Defendant was initially charged only with aggravated discharge of a firearm and unlawful use of a weapon by a felon. The reckless discharge counts were added by a superseding indictment filed on September 26, 2022.

[2]Because defendant shares a last name with his twin brother, to avoid confusion, this court will refer to Charleton Patterson by his first name.

offenses and 6½ years in prison on the UUWF offense. The sentences were ordered to be served concurrently.

¶ 7   The evidence at trial demonstrated that in the early morning hours of April 30, 2022, a large number of people (50-100) gathered in parking lots in downtown Carbondale. The police responded to a call for shots being fired. Due to the large number of people relative to the number of police officers, the scene was not secured. On the scene, police recovered a total of 7 .40-caliber shell casings and 10 9-millimeter shell casings. Police also recovered a cell phone with notifications appearing to be addressed to Charleton. Several identification cards for Charleton, including a current driver's license, were found inside the cell phone case. Police also recovered a white ski mask that was rolled up on the bottom and resembled a cap.

¶ 8   The parking lots were under video surveillance, and the police reviewed video footage of the incident. Three suspects were identified from the video, all wearing plain white t-shirts. One suspect wore a white ball cap, one wore a black ball cap, and one wore a white beanie style cap. Carbondale Police Lieutenant Jarin Dunnigan testified that he reviewed a Snapchat video that was sent to the police. The video helped him identify individuals who were present at the time of the shooting. He also reviewed the parking lot videos which he believed showed the individuals present in the Snapchat video. The investigation ultimately focused on defendant and his codefendants, Charleton and Jones.

¶ 9   Defendant was arrested on May 10, 2022. His bond was set at $750,000, and defendant remained in custody while his case was pending. On May 11, 2022, the Jackson County Public Defender, Celeste Korando, was appointed to represent defendant, and the matter was set for a preliminary hearing on May 24, 2022. On May 20, 2022, defendant was indicted on the same charges. Defendant was arraigned on the charges on May 25, 2022. The matter was set for a final

pretrial conference on May 31, 2022, a status hearing on August 25, 2022, and for jury trial on August 29, 2022.

¶ 10    The State filed a motion for joinder on August 19, 2022. In its motion, the State asked the trial court to join defendant's case with those of his codefendants, Charleton and Jones.

¶ 11    On August 22, 2022, defendant appeared in court with attorney Korando. Korando confirmed that defendant was ready for trial on August 29, 2022. The trial court noted that the matter was set on August 25, 2022, for a hearing on the State's motion to join defendant's matter with those of his codefendants. Korando noted an objection to the State's motion, and the matters remained set for the August 25, 2022, hearing.

¶ 12    Defendant's cases, as well as his codefendants' cases, were called for "all pending motions" on August 25, 2022. First, with regard to Jones, a new attorney, Matt Foster, appeared on his behalf. Although the record is not clear as to when Foster became Jones's attorney, he told the court that the file he received from prior counsel a week and a half earlier did not contain discovery. Foster explained to the trial court that he was in "an ethical quandary" since he would have such a short amount of time to prepare for trial, but that Jones insisted on proceeding to trial and did not want to give up his speedy-trial rights. For this reason, Foster had not filed a motion to continue the case. Noting that Charleton still had a pending motion to continue,[3] the court asked his attorney, Alex Enyart, if he had anything to add since the prior hearing. Enyart said that "it would be beneficial to [defendant] to have more time to prepare" but that he was maintaining a "speedy trial posture."

---

[3]Charleton's attorney, Alex Enyart, filed a motion to continue Charleton's case on August 15, 2022, prior to the State's motion to join the defendants. At the August 22, 2022, hearing on the motion to continue, Charleton appeared and told the court that he was objecting to the continuance. The trial court deferred ruling on the motion to continue, noting that the matter was set for a hearing on the State's motion to join three days later.

¶ 13    Defendant's attorney, Korando, filed a motion for sanctions against the State just prior to the hearing. Korando stated that she just learned that one of her juvenile clients was interviewed the prior week in connection with the case. She also told the trial court that defendant told her the day before that yet another one of her clients, Cody Dempsey, had been subpoenaed to testify in the trial. Korando advised that she was unaware that Dempsey gave a statement in regard to this case, because nothing in the discovery purported to include a statement from him. Noting that the State's recent disclosure of these two witnesses created a *per se* conflict of interest for her, and further noting that defendant's speedy-trial term would end on September 6, 2022, Korando argued that the State's creation of a *per se* conflict of interest was "an unnecessary delay tactic by the State to delay [defendant's] trial beyond the 120 day speedy-trial limit." She asked the court to sanction the State by preventing them from calling the two witnesses at trial.

¶ 14    The State responded that it was the defendants' own actions that put them in this situation, and that the discovery tendered to the defendants demonstrated that Dempsey was "on the radar" for the defense. Since Dempsey recently indicated a willingness to cooperate with the State, the State argued that it was Dempsey that put the defense in that position. Regarding Korando's juvenile client, the State explained that the juvenile reached out to the State the week before and asked to speak to detectives regarding the case.

¶ 15    Without ruling on Korando's motion for sanctions, the trial court considered the State's motion for joinder. After hearing argument, the court granted the motion to join the cases over the objections of all three defendants. The court denied Korando's motion for sanctions. Given that this created a conflict of interest for Korando, she sought to withdraw as counsel for defendant. The court granted her motion to withdraw. Defendant asked for an attorney to be appointed immediately, noting that he was ready to go to trial the following Monday.

¶ 16 The trial court answered that it would need time to appoint an attorney for defendant. Defendant reiterated that he wanted to go to trial on Monday, and that he did not want his case continued. When the court further explained that it would need to find conflict-free counsel for defendant, defendant asked to be released on his own recognizance. That request was subsequently denied. The trial court stated the following:

> "Gentlemen, I'll note all of your demands. That you're ready for trial, you want to go to trial. You [Simeon] don't have counsel though. *** Based upon that, I'm inclined to vacate this trial date, reset it over within a short period of time. Any delay to one defendant will be joined as a delay to all defendants."

The judge then announced, "I'm going to vacate the trial dates."

¶ 17 Attorneys for both Charleton and Jones raised speedy-trial concerns, advising the trial court that they believed the speedy-trial term for their clients would run on "Sunday or Monday." They asked that their clients be released on their own recognizance. The State objected to the defendants' release from custody. The trial court ruled, "We'll find that the delay to one Defendant's a delay to all Defendants in this situation. We are going to vacate the trial settings." The court also denied the "oral motions to recog."

¶ 18 Later that same day, Charleton's attorney, Enyart, filed a motion to withdraw as counsel. In his motion, Charleton's attorney noted that the State provided him with additional discovery that same day, and that the newly tendered discovery revealed an additional witness who was simultaneously being represented by Enyart, creating a *per se* conflict of interest. The court ultimately granted Enyart's motion on September 12, 2022, and appointed attorney Andrew Wilson to represent Charleton.

¶ 19 On August 29, 2022, the trial court appointed attorney Kacey Eisenhauer to represent defendant. On August 30, 2022, the court set all three defendants' cases for a status hearing on September 26, 2022, and for jury trial on October 3, 2022.

6

¶ 20 The trial court held a status hearing on September 26, 2022. At the outset, the court gave a brief history of the case, including the fact that the prior jury trial setting was vacated over the objection of all three defendants. The court noted Wilson's pending motion to withdraw. Defendant's newest attorney, Kacey Eisenhauer, orally moved to withdraw as his attorney, citing a *per se* conflict of interest. The court granted Eisenhauer's motion to withdraw. Charleton's newest attorney, Andrew Wilson, had a pending motion to withdraw due to the hardship the case would have on his practice. Wilson's motion to withdraw was denied.

¶ 21 The trial court told defendant that new counsel would need to be appointed to represent him. Defendant asked the court if he could file a motion to sever his charges from those of his codefendants. The court noted that defendant asked for an attorney, and that defendant could raise this issue with his new attorney. Defendant said that he would go to trial on his own next week and asked why his case kept getting "pushed back." The court explained that the case was being reset "because you folks are altogether on the same case." Defendant again stated that he would like to go to trial on his own, and the court stated, "If we go to trial, the cases were already joined, we'll be going to trial together, all three of you." The court concluded that it had no choice but to vacate the trial setting, and it did so while again noting defendants' objections. The court did not set a new trial date.

¶ 22 The trial court held a status hearing on October 4, 2022. Attorney Daniel Kay was appointed to represent defendant. Noting the defendants' ongoing objections to having their cases continued, the trial court set the matter for pretrial on October 25, 2022, a case management conference on December 2, 2022, a status hearing on January 9, 2023, and finally a jury trial on January 17, 2023.

¶ 23 The next hearing occurred on October 25, 2022. The trial court again began by noting the defendants' objections regarding the setting of trial dates and continuances. At the close of the hearing, defendant spoke directly to the court and noted that his 120 days "was up two months ago." The court noted that it previously found the delay attributable to defendant.

¶ 24 The jury trial commenced on January 17, 2023. After jury selection, but prior to any testimony, the trial court again noted that it previously ruled on a number of pretrial motions, that the objections to those rulings were noted, and that the rulings remained the same. Matthew Foster, attorney for codefendant Jones, renewed his previously filed motions regarding the speedy-trial issue and the severing of the cases. Attorneys Wilson and Kay, on behalf of Charleton and defendant, respectively, joined in Foster's motions.[4] The court affirmed its prior rulings on these issues.

¶ 25 The matter proceeded to trial, and on January 30, 2023, the jury found defendant guilty of two counts of reckless discharge and UUWF. Defendant was found not guilty of aggravated discharge of a firearm. Defendant filed a motion for a new trial, raising several claims of error, including his claim that his right to a speedy trial had been violated. On November 28, 2023, defendant's motion for a new trial was denied, and the court sentenced defendant to 5 years in prison on each of the reckless discharge offenses and 6½ years in prison on the UUWF charge. The sentences were ordered to be served concurrent with one another.

¶ 26 Defendant filed a timely notice of appeal on December 26, 2023.

---

[4]The record does not reflect that defense counsel filed a written motion for discharge, but rather orally joined in Foster's motion. The State did not object.

¶ 27                                    II. ANALYSIS

¶ 28    Defendant raises several issues on appeal. However, we need only address defendant's claim that his speedy-trial rights were violated. Defendant's argument that his statutory speedy-trial rights were violated is straightforward. Despite defendant telling the trial court that he wanted to exercise his right to a speedy trial, his matters were twice continued over his objection due to circumstances beyond his control; *i.e.*, the trial court's need to find conflict-free counsel to represent defendant. These delays caused defendant's trial to be set outside the 120-day statutory limit. For these reasons, defendant argues that the trial court abused its discretion by attributing to him the delay caused by the court's need to find him conflict-free counsel. We agree with defendant that his statutory right to a speedy trial was violated, and we therefore reverse his convictions. Since we find this issue dispositive, we address only defendant's claim that his speedy-trial rights were violated and need not address his remaining arguments on appeal.

¶ 29    In response, the State argues that the trial court did not abuse its discretion by attributing the delays to defendant. Specifically, the State argues that attorney Korando's need to withdraw as counsel for defendant is a delay attributable to defendant, because Korando moved to withdraw just four days prior to trial and that Korando's withdrawal "would have necessitated a new trial date be set." Despite this court previously holding that delays generally are not attributable to a defendant for delays caused when defense counsel withdraws on her own initiative (*People v. Collum*, 98 Ill. App. 3d 385 (1981)), the State argues that the *timing* of the withdrawal distinguishes *Collum* from the case before this court. Relying on *People v. Solis*, 207 Ill. App. 3d 357 (1991), the State argues that, under the circumstances of this case, the delay must be attributable to defendant, otherwise a defendant could find himself in a "no-lose" situation in which "merely fortuitous circumstances" would enable a defendant "to exploit his constitutional right to a

9

competent attorney but nevertheless escape all charges through a technical application of the speedy-trial statute." *Id.* at 361-62 (citing *People v. Bowman*, 138 Ill. 2d 131, 148 (1990)). We disagree with the State's analysis.

¶ 30　　Section 103-5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(a) (West 2020)) implements a right guaranteed by the federal and Illinois Constitutions (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8). Although the constitutional and statutory provisions address similar concerns, the rights they establish are not necessarily coextensive. *Bowman*, 138 Ill. 2d at 136 (citing *People v. Garrett*, 136 Ill. 2d 318, 323 (1990); *People v. Richards*, 81 Ill. 2d 454, 459 (1980)). The statute is to be liberally construed, and each case is decided on its own facts. *Id.* at 136-37 (citing *People v. Jones*, 104 Ill. 2d 268, 273-74 (1984); *People v. Reimolds*, 92 Ill. 2d 101, 106 (1982)). Section 103-5(a) states that every person in custody for an alleged offense shall be tried within 120 days from the date he is taken into custody unless delay is occasioned by the defendant. 725 ILCS 5/103-5(a) (West 2020). Every person not tried in accordance with section 103-5(a) must be discharged from custody and is entitled to have the charges dismissed. *Id.* §§ 103-5(d), 114-1(a)(1); *Bowman*, 138 Ill. 2d at 137 (citing *Richards*, 81 Ill. 2d at 459). "For purposes of a speedy-trial question, a delay is charged to the accused where his act in fact causes or contributes to the delay." *Bowman*, 138 Ill. 2d at 139-40 (citing *Riemolds*, 92 Ill. 2d at 106). When pursuing a motion to dismiss for speedy-trial violation, the defendant has the burden of affirmatively establishing the violation. *Id.* at 137 (citing *Jones*, 104 Ill. 2d at 280; *Reimolds*, 92 Ill. 2d at 106). "The trial court's determination as to who is responsible for the delay of trial is entitled to much deference, and should be sustained in the absence of a clear showing of the trial court's abuse of discretion." *Id.* (citing *Reimolds*, 92 Ill. 2d at 107). The right to a speedy trial is a personal right. *People v. Brame*, 6 Ill. 2d 412, 413 (1955). As noted above, delays for the purpose of finding

10

conflict-free counsel for a defendant are not generally attributable to the defendant. *Collum*, 98 Ill. App. 3d at 387.

¶ 31    The resolution of this matter requires consideration of this court's decisions in *People v. Roberts*, 133 Ill. App. 3d 731 (1985), and *Collum*, 98 Ill. App. 3d 385. In *Roberts*, the defendant's and his codefendant's charges were joined, and a single public defender, Harold Pennock, was appointed to represent both men. *Roberts*, 133 Ill. App. 3d at 736. Pennock moved to withdraw as counsel after concluding that although no conflict of interest existed between the two men, his contract with Marion County covered only conflicts cases. *Id.* The trial court granted the motion, and another attorney was appointed to represent both men. *Id.* The following day, the second attorney noted a potential conflict of interest between the two men, and Pennock was again appointed to represent defendant. *Id.* Thereafter, the codefendant filed a motion to sever, and despite the State confessing the motion, the trial court denied the motion to sever. *Id.*

¶ 32    The State then moved to dismiss the codefendant's charges, which was also denied by the court. *Id.* The State took an interlocutory appeal of the denial of its motion to dismiss the codefendant, and on its own motion, the court stayed the proceedings for both men. *Id.* That same date, the State and the defendant both announced that they were ready for trial. *Id.* The defendant later moved for dismissal based upon a speedy-trial violation, which was denied by the trial court. *Id.* Following trial, the defendant appealed the trial court's denial of his motion to dismiss for a speedy-trial violation. *Id.*

¶ 33    This court reversed defendant's conviction, rejecting the State's argument that the two men were inseparable for speedy-trial purposes since they were tried jointly. *Id.* at 737. Observing "that a delay chargeable to a defendant must occur as a result of the defendant's own actions" (*id.*), this court held that, "[s]ince the right to a speedy trial is a right personal to the accused (*People v.*

11

*Brame* (1955), 6 Ill. 2d 412, 413, 128 N.E.2d 911, 912), such right may not be waived because of delays occasioned by a codefendant for which the accused was not in any way responsible." *Id.* at 738. Addressing the State's contention that the defendant was partially responsible for the delay that led to Pennock's withdrawal, this court rejected that argument, noting that "where *** counsel withdraws on his own initiative, any resulting delay cannot be charged to defendant." *Id.* (citing *Collum*, 98 Ill. App. 3d at 387).

¶ 34    In *Collum*, the defendant was taken into custody and charged on June 10, 1980. *Collum*, 98 Ill. App. 3d at 385. The public defender was appointed on June 20, 1980, but later filed a motion to withdraw as counsel on August 11, 1980. *Id.* The motion to withdraw apparently alleged that the public defender had a conflict of interest. *Id.* at 387. On August 29, 1980, the motion to withdraw was granted, and on September 16, 1980, new counsel was appointed. *Id.* at 386. Just prior to trial, defense counsel filed a motion to have the defendant discharged on the basis that 132 days had passed since defendant was taken into custody. *Id.* That motion was denied. *Id.*

¶ 35    On appeal, this court noted that this was not a case where the public defender moved to withdraw (1) "at the direction of defendant"; (2) "under circumstances in which defendant acquiesced in the court's statement that the cause was continued on defendant's motion"; (3) "followed by defendant's request that his new counsel be given time to prepare"; or (4) where "defendant becomes disenchanted with defense counsel and seeks a replacement." *Id.* at 387. Rather, this court noted that this was a situation where the public defender sought leave to withdraw "on their own initiative." *Id.* Because the delay was not caused by the defendant, this court concluded that the delay could not be attributed to defendant and reversed the trial court. *Id.* Although *Collum*'s pronouncement that a defendant is not responsible for delays caused when appointed counsel withdraws "on their own initiative" is overly broad, *Collum* stands for the

12

proposition that a defendant is not responsible for the delay caused when his appointed counsel is forced to withdraw due to a conflict of interest.

¶ 36    Based on the facts before us, discussion of the Illinois Supreme Court's *Bowman* decision is also warranted. In *Bowman*, the defendant's public defender withdrew due to a conflict of interest. *Bowman*, 138 Ill. 2d at 135. An attorney under contract with Rock Island County to handle conflicts, Fred Kopp, was appointed to represent the defendant. *Id.* After the matter was set for trial, Kopp resigned his position as a conflicts defender, and the new conflicts attorney, Alex Jarrin, was appointed to represent the defendant. *Id.* Due to the backlog of cases and based upon his understanding that the defendant knew that this would cause a delay in the trial date, Jarrin continued the trial without having it set for a specific date. *Id.* Two months later, the defendant sent a letter to the chief judge, stating that he did not want a continuance, that he did not know Jarrin would need more time to prepare for trial, and that he was never told that the continuance would waive his right to a speedy trial. *Id.* at 136. Subsequently, yet another attorney, Richard Coppula, entered his appearance on the defendant's behalf and filed a motion to dismiss the charges based upon a violation of the defendant's speedy-trial rights. *Id.*

¶ 37    The trial court dismissed the charges against the defendant and the appellate court affirmed. *Id.* As explained by our supreme court:

> "The [appellate] court viewed the defendant as being forced to choose between two compromising positions: he could have gone to trial on November 23, 1987, with unprepared counsel, or he could have waived his right to a speedy trial. The appellate court determined that this was the result of actions taken by the attorneys involved and the County of Rock Island, and was not due to any conduct on defendant's part. Thus, any decision made by defendant to waive his right to a speedy trial was made under duress." *Id.* at 138 (citing *People v. Bowman*, 180 Ill. App. 3d 755, 758 (1989)).

¶ 38    The Illinois Supreme Court reversed the appellate court, finding that the "defendant failed to affirmatively establish *** a violation, and that the trial court erred in its application of the law

13

to the facts." *Id.* Noting that the trial court made no factual determination as to whether defendant approved or acquiesced to the change in attorneys, the *Bowman* court observed that the defendant did not object to Jarrin taking over for Kopp, and that both Jarrin and Kopp testified that defendant agreed to the change. *Id.* at 139. Accordingly, the *Bowman* court determined that the defendant had acquiesced to the delay. *Id.* at 140.

¶ 39 The *Bowman* court then noted that the "appellate court has repeatedly held that the delay a continuance causes is properly charged to an accused where his counsel required more time to prepare for trial." *Id*. This is based, in part, on the general rule in Illinois that a client is bound by the acts or omissions of his lawyer-agent. *Id.* at 141. Consequently, when a public defender requests a continuance on behalf of a defendant, the resulting delay is attributable to the defendant for the purpose of tolling the statutory speedy-trial period. *Id.* This is true even when the motion to continue is made in the defendant's absence. *Id.* at 142.

¶ 40 Applying these principles to the defendant's claim, the *Bowman* court held "that defendant cannot claim that his action, or lack thereof, did not contribute to the delay caused by Jarrin's filing of the motion for a continuance on his behalf." *Id.* at 143. Because a "party who does not promptly repudiate an attorney's unauthorized act upon receiving knowledge of such an act has effectively ratified the act," the court found that the defendant's "delay in objecting to the allegedly unauthorized waiver of his speedy-trial right *** was also a factor contributing to the delay the motion to continue caused." *Id.*

¶ 41 The *Bowman* court also discussed this court's decisions in *Roberts* and *Collum*. *Bowman* distinguished *Roberts* and *Collum* on the basis that the public defenders in both cases were required to withdraw as counsel due to a conflict of interest, meaning that the delay in those cases "was not due to the direct results of the accused's own actions, such as when the accused himself requests

14

that the public defender withdraw." *Id.* at 144. As the *Bowman* court noted, "[w]here an attorney has a conflict of interest with the party he represents, both the attorney and the accused have no choice. The attorney must withdraw, and the accused must obtain another attorney or have new counsel appointed." *Id.* at 145. By contrast, Bowman's first attorney, Kopp, voluntarily withdrew as counsel. *Id.* Since Bowman did not object to Jarrin's representation, but rather only objected to Jarrin's trial strategy (by the filing of the motion to continue), *Roberts* was distinguishable. *Id.* The *Bowman* court acknowledged, however, that "the conclusion of the *Roberts* case is logically sound." *Id.*

¶ 42    Next, the *Bowman* court addressed the appellate court's contention that the series of events placed the defendant in a compromising position; *i.e.*, that the defendant could either choose to go to trial with an unprepared attorney or forgo his right to a speedy trial. *Id.* at 147. The *Bowman* court disagreed. The *Bowman* court reasoned that the appellate court's logic placed the defendant in a "no-lose" situation: "Had defendant chosen to go to trial on November 23, 1987, and lost, his claim on appeal might have been ineffective assistance of counsel." *Id.* at 148. Recognizing that situations arise where a defendant cannot exercise both his speedy-trial right and his right to effective assistance of counsel, the *Bowman* court noted that a defendant should not be "able to exploit his constitutional right to a competent attorney and escape all charges through the technical application of the speedy-trial statute." *Id.* (citing *United States v. Russo*, 550 F. Supp. 1315, 1321 (D.N.J. 1982)). The *Bowman* court noted that it had previously concluded that "the due process rights of defendants are not denied when they are forced to choose between the two constitutional rights of speedy trial and effective assistance of counsel." *Id.* at 147 (citing *People v. Lewis*, 60 Ill. 2d 152, 156-57 (1975); *People v. Williams*, 59 Ill. 2d 402, 405-06 (1974)).

15

¶ 43     Turning to the instant cause, based on the facts before us, we find that *Collum* controls. The State attempts to distinguish *Collum*, in part, based upon the timing of Korando's motion to withdraw as counsel, noting it was filed four days prior to trial. By contrast, the State notes that the motion in *Collum* was filed well in advance of the trial date. This is a distinction without merit, as nothing in the *Collum* decision suggests that the timing of the motion to withdraw was integral to that decision. Based on *Collum*, we conclude that the trial court abused its discretion in attributing to defendant the delays caused by the court's need to find defendant conflict-free counsel.

¶ 44     In support of its argument that Korando's withdrawal as counsel was properly attributed to defendant, the State relies upon *Solis*, 207 Ill. App. 3d 357. The *Solis* court was critical of *Roberts* and *Collum*, stating:

> "To the extent that the holdings of *Roberts* and *Collum* can be so broadly interpreted that a last-minute conflict of interest requiring the withdrawal of counsel can be brought to the trial court's attention just before trial so that discharge must be automatically granted, we reject such an interpretation of those cases in light of *Bowman* [citation]." *Id.* at 363.

The facts of *Solis* are readily distinguishable from the case before this court and from the facts in *Roberts* and *Collum*.

¶ 45     In *Solis*, defense counsel *created* a potential conflict of interest shortly before trial by taking a statement from a witness who repudiated his initial identification of the defendant but then recanted his repudiation. *Id.* at 359. As a result, the attorney injected himself into the case as a potential witness, thereby creating a potential conflict of interest. *Id.* at 362. When this fact was brought to the trial court's attention, the attorney moved for a continuance and agreed that the delay would be attributable to the defendant. *Id.* at 358-59. New counsel later appeared to represent defendant, and that attorney continued the case to prepare for trial. *Id.* at 359. The defendant raised

16

no objections to the continuances. *Id.* Accordingly, the *Solis* court found that the "defendant must be deemed to have acquiesced to his representation by counsel, their withdrawal, and the resulting continuances." *Id.* at 362. Furthermore, the *Solis* court found *Roberts* and *Collum* "factually inapposite to the case before us as did our supreme court in *Bowman*." *Id.* at 363.

¶ 46 With regard to the *Solis* court's reliance upon *Bowman*, we note that the attorney in *Bowman* was not *required* to withdraw but instead withdrew because he was no longer the conflicts attorney for the county. Bowman's new attorney entered his appearance and continued the case (*Bowman*, 138 Ill. 2d at 135), and the defendant neither objected to the appointment of new counsel nor repudiated the continuance until nearly two months later. *Id.* at 143. Using an attorney-agent analysis, the *Bowman* court found that the defendant acquiesced in the appointment of new counsel and effectively ratified the motion to continue by failing to timely object to the continuance. *Id.* For these reasons, *Bowman*'s analysis is not applicable to the instant case. Again, we note that the *Bowman* court found the conclusion of *Roberts* to be "logically sound." *Id.* at 145.

¶ 47 We understand the State's concern that the filing of motions to withdraw by counsel shortly before trial and late in a defendant's speedy-trial term could lead to abuses. Indeed, that was a concern of the *Bowman* court. As noted, the *Bowman* court expressed concern that a defendant who fortuitously finds himself with an overburdened attorney who needs more time to prepare his case for trial could be placed in a no-lose situation wherein the defendant could exploit his constitutional right to a competent attorney against his right to a speedy trial. *Id.* at 148. The solution to this issue is to require the defendant to choose which right he wants to exercise. *Id.* In the case before us, defendant clearly and repeatedly expressed his desire to exercise his right to a speedy trial. Nothing in the record before this court suggests defendant was trying to take

17

advantage of his "fortuitous" circumstances. Instead, the record supports the notion that defendant consistently tried to exercise his right to a speedy trial.

¶ 48   A defendant can demand both competent counsel and a speedy trial. If a defendant's own actions cause a conflict between these two rights, then the defendant may be forced to choose between which of the two rights he wants to exercise. *Id.* at 147. In the instant case, however, defendant did nothing to create the tension between these two rights. Korando's conflict of interest was not created by any action taken by either defendant or his counsel. Neither Korando nor defendant had a choice. Korando was required to withdraw as counsel for defendant due to a conflict of interest. While the timing of the motion may have been detrimental to the State, the record before this court is clear: Contrary to the State's assertions that (1) "the short amount of time that each attorney had to work on the cases"; (2) "the complexity of the evidence"; and (3) "the insistence of the defendants to not allow an appropriate amount of time to review the discovery" caused two of the attorneys to fail to discover they had conflicts "until four days before trial was scheduled," it was the State's disclosure of discovery four days prior to the scheduled trial that created a conflict of interest for defendant's attorney. Such are the perils of setting an initial trial date late in a defendant's speedy-trial term, especially when coupled with the late disclosure of additional discovery. The delay herein did not occur as a direct result of the defendant's own actions.

¶ 49   The State is "hesitant to suggest that the attorneys intentionally waited until the eleventh hour to file their motions to withdraw in order to exploit the system," but argues that granting defendant discharge under the facts of this case "would have that effect" and allow a " ' "mockery of justice" either by technical evasion of the right to speedy trial by the State, or by a discharge of a defendant by a delay in fact caused by him.' " *People v. McKinney*, 59 Ill. App. 3d 536, 541

18

(1978) (quoting *People v. Shields*, 58 Ill. 2d 202, 204 (1974)). We disagree, and note that failing to order the discharge of defendant under the facts of this case could provide an unscrupulous prosecutor with the opportunity to make a late disclosure of a witness in the hopes of having defense counsel conflicted off a case. While the record does not reflect that either side sought to make a "mockery of justice," Korando accused the State of making the late disclosure for the precise reason of having her conflicted off the case four days prior to trial.

¶ 50     The record demonstrates that defendant repeatedly indicated his preference for exercising his speedy-trial rights. The actions of both the trial court and the State denied defendant that choice through no fault of his own. The statute, which is to be liberally construed in favor of the defendant (*Bowman*, 138 Ill. 2d at 136), requires the defendant to be tried within the statutory timeframe of 120 days. The burden is on the State to ensure that this occurs unless there are delays attributable to the defendant. 725 ILCS 5/103-5(a) (West 2020); *People v. Castillo*, 372 Ill. App. 3d 11, 16 (2007). We recognize that defendant faced serious charges, that the discovery was voluminous, that there were dozens of potential witnesses, and that several people were charged as a result of the occurrence. The statute, however, does not draw distinctions between simple and complex cases or between less serious charges and the most serious charges. *Contra* 18 U.S.C. § 3161(h) (2018) (allowing certain delays to be excluded from a defendant's speedy-trial period, including situations where the case is "so unusual or so complex, due to the number of defendants, the nature of the prosecution, *** that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits" of the statute). Rather, the statute provides that "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant[.]" 725 ILCS 5/103-5(a) (West 2020).

19

¶ 51    Consistent with the precedent of this court, defendant's speedy-trial term was not tolled by defense counsel's forced withdrawal from the case due to a *per se* conflict of interest. *Collum*, 98 Ill. App. 3d at 387. After Korando withdrew, defendant asked for the immediate appointment of counsel and stated that he was still ready to go to trial the following week. Despite defendant's objection to the matter being continued, the trial court vacated the August 29, 2022, trial date. On August 29, 2022, attorney Eisenhauer was appointed to represent defendant, and on August 30, 2022, the court set the matter for trial on October 3, 2022, which is outside of defendant's speedy-trial term.[5] For these reasons, under the specific facts and circumstances of this case, we find that the trial court abused its discretion by attributing delay to the defendant caused by the court's need to find conflict-free counsel for defendant. For the foregoing reasons, as defendant was not tried in accordance with section 103-5(a), his charges must be dismissed and he must be discharged from custody. 725 ILCS 5/103-5(d), 114-1(a)(1) (West 2020). Given our disposition, we need not address defendant's remaining claims.

¶ 52                                    III. CONCLUSION

¶ 53    The judgment and sentence of the circuit court of Jackson County is reversed, the matters are dismissed, and defendant is ordered to be discharged.

¶ 54    Reversed, dismissed, and defendant discharged.

---

[5]As noted above, Eisenhauer withdrew due to a conflict of interest on September 26, 2022. The trial court vacated the October 3, 2022, trial date so that it could again try to find conflict-free counsel for defendant. The court set the matter for trial on January 17, 2023, the eventual trial date. This delay was also improperly attributed to defendant. However, because defendant's speedy-trial term had already run, this court need not engage in any further analysis of the impact of the court's decision to vacate the October 3, 2022, jury setting.