(No. 68539.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RICKY BOWMAN, SR., Appellee.

*Opinion filed September 26, 1990.*

132

Neil F. Hartigan, Attorney General, of Springfield, and Marshall E. Douglas, State's Attorney, of Rock Island (Kenneth R. Boyle, John X. Breslin and Gary F. Gnidovec, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Patrick J. Hughes, Jr., of the Office of the State Appellate Defender, of Springfield, for appellee.

JUSTICE STAMOS delivered the opinion of the court:

On April 29, 1987, defendant, Ricky Bowman, Sr., was charged by complaint with residential burglary. Defendant was arrested and taken into custody on Au-

gust 6, 1987. On that same day, defendant made his initial appearance on this charge in the circuit court of Rock Island County. The public defender was appointed to represent defendant and made a demand for a speedy trial. (See Ill. Rev. Stat. 1985, ch. 38, par. 103—5.) Because of a conflict of interest, the public defender was allowed to withdraw. Attorney Fred Kopp, under contract with the county to handle cases in which the public defender had a conflict, was appointed to represent defendant on August 11, 1987.

On October 8, 1987, the circuit court entered a pretrial order setting defendant's trial date as November 23, 1987. However, Kopp resigned as conflict attorney for the county on October 1, effective November 1, 1987. On November 1, attorney Alex Jarrin became the new conflict attorney for Rock Island County.

When Jarrin took over the conflict attorney's position, he faced a large case backlog. Kopp had informed Jarrin that defendant was aware that Jarrin could not try the case on its scheduled date because of Jarrin's lack of time to prepare, and that defendant understood why a continuance would be sought. Based on Kopp's representations, Jarrin believed that a continuance would not be adverse to defendant's interests. Both Kopp and Jarrin testified that defendant had expressed a preference for a continuance because defendant wanted to spend as much time as possible in the Rock Island County jail. Defendant believed that any time he spent in the county jail would be credited toward time he was due to spend in the Iowa penitentiary for a conviction in that State. Jarrin testified that at no time prior to the original trial date did defendant express aversion to a continuance or a desire to go to trial on November 23. As a result, on November 18, Jarrin had the case generally continued without having the court set a certain trial date. Jarrin and the assistant State's Attorney

stipulated that the delay caused by the continuance would be attributable to defendant. Jarrin then informed defendant that the case would probably be placed on the December or January trial calendar.

On January 15, 1988, defendant sent a letter to the chief judge, claiming that his right to a speedy trial had been violated because he had been in custody for 197 days without a trial. This letter stated that defendant had not wanted a continuance but had wanted the trial to occur on November 23, 1987. The letter also stated that defendant was unaware that Jarrin needed a continuance to prepare the case for trial, and that defendant was never informed that the continuance would waive his right to a speedy trial.

On February 18, 1988, attorney Richard Coppula filed an appearance on defendant's behalf, replacing Jarrin. At that time, defendant filed a motion to dismiss, alleging a violation of the speedy-trial act. The trial judge granted this motion. The appellate court affirmed. (180 Ill. App. 3d 755.) We granted the State's petition for leave to appeal (107 Ill. 2d Rules 315(a), 612(b)).

The only issue that this court needs to examine on appeal is whether defendant's motion to remove his case from the November 23, 1987, trial calendar and to continue the matter was an action attributable to him which therefore tolled the 120-day speedy-trial period.

Section 103—5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 103—5(a)) implements a right guaranteed by the Federal and Illinois Constitutions (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8). Although the constitutional and statutory provisions address similar concerns, the rights which they establish are not necessarily coextensive. (*People v. Garrett* (1990), 136 Ill. 2d 318, 323; *People v. Richards* (1980), 81 Ill. 2d 454, 459.) This court has stated that the statute is to be liberally construed as

courts decide each case on its own facts. (*People v. Jones* (1984), 104 Ill. 2d 268, 273-74; *People v. Reimolds* (1982), 92 Ill. 2d 101, 106.) Section 103—5(a) specifically states that an accused in custody must be brought to trial within 120 days from the date he is taken into custody, unless delay is occasioned by the defendant. (Ill. Rev. Stat. 1987, ch. 38, par. 103—5(a); *Reimolds*, 92 Ill. 2d at 106.) Any accused not tried within the parameters of section 103—5(a) must be discharged from custody and is entitled to have the charges dismissed. (Ill. Rev. Stat. 1987, ch. 38, pars. 103—5(d), 114—1(a)(1); *Richards*, 81 Ill. 2d at 459.) On a motion to dismiss for violation of the right to speedy trial, the defendant has the burden of affirmatively establishing the violation. (*Jones*, 104 Ill. 2d at 280; *Reimolds*, 92 Ill. 2d at 106.) The trial court's determination as to who is responsible for the delay of trial is entitled to much deference, and should be sustained in the absence of a clear showing of the trial court's abuse of discretion. *Reimolds*, 92 Ill. 2d at 107.

The appellate court, in affirming the circuit court's granting of defendant's motion to dismiss, noted that when a court-appointed attorney withdraws from a case on his own initiative, any resulting delay cannot be charged to the accused unless the withdrawal occurs under circumstances which indicate that the accused acquiesced in the delay. It also recognized that a court of review will affirm a decision on such a motion as defendant's unless it amounts to an abuse of discretion. 180 Ill. App. 3d at 757 (citing *People v. Roberts* (1985), 133 Ill. App. 3d 731; *People v. McGuire* (1984), 123 Ill. App. 3d 908; *People v. Keagbine* (1979), 77 Ill. App. 3d 1039).

Applying the cited precedent to the case at bar, the appellate court held that defendant did not voluntarily acquiesce in the delay occasioned by the withdrawal of

his counsel. The court viewed the defendant as being forced to choose between two compromising positions: he could have gone to trial on November 23, 1987, with unprepared counsel, or he could have waived his right to a speedy trial. The appellate court determined that this was the result of actions taken by the attorneys involved and the County of Rock Island, and was not due to any conduct on defendant's part. Thus, any decision made by defendant to waive his right to a speedy trial was made under duress. 180 Ill. App. 3d at 758.

We disagree with the appellate court's holding, and therefore reverse. In order to sustain his claim of a violation of his speedy-trial rights, defendant needed to affirmatively establish the violation before the trial court. (*Jones*, 104 Ill. 2d at 280; *Reimolds*, 92 Ill. 2d at 106.) We determine that the record in the case at bar reveals that defendant failed to affirmatively establish such a violation, and that the trial court erred in its application of the law to the facts.

Defendant testified that he did not discover that Jarrin was his attorney until he contacted Kopp by telephone on November 18, 1987. Defendant stated that this was the first time he learned that Kopp had resigned as the conflict attorney for the county and that Jarrin would be replacing Kopp. He further stated that he did not learn of the November 18 motion to continue until November 20, when he allegedly first spoke with Jarrin. Defendant said that, at that time, he told Jarrin that he "did not want a continuance." He then said that he did not speak to Jarrin again until January 22, 1988. Defendant also explained that neither Kopp nor Jarrin had explained his speedy-trial rights to him and that neither of them had admonished him regarding the effect a continuance would have on those rights. On cross-examination, defendant also denied that he had wanted to stay

in the county jail; instead, he said that he had wanted to return to Iowa.

Defendant's testimony before the trial judge directly conflicted with much of the testimony of Kopp and Jarrin, who had both stated that they had several meetings with defendant, informed him of his speedy-trial rights, and explained the need for the continuance and its effect on speedy-trial matters, and that defendant had expressed a desire to continue the case. The trial judge, however, chose to believe defendant's testimony and expressly held that the evidence showed that defendant had not wished to have his trial continued. The trial judge further stated, and the appellate court expressly affirmed (180 Ill. App. 3d at 758), that defendant should not have had to choose between the right to competent counsel and a speedy trial.

We note that, in a criminal case, a factual determination made by a trier of fact is entitled to great weight, but where the record does not support the finding, this court must reverse. (*People v. Patterson* (1972), 52 Ill. 2d 421, 424.) Where the truth must be ascertained from a debatable set of circumstances, it is a matter for the trier of fact; it is not for the reviewing court to substitute its own opinion. (*People v. Woods* (1963), 26 Ill. 2d 582, 585.) Under these rules of appellate jurisprudence, we find it inappropriate to reassess defendant's credibility, and we judge that we must accept the trial court's determination that defendant did not ask for, or expressly acquiesce to, the continuance.

However, the trial court made no factual determination regarding defendant's approval of or acquiescence in the change of attorneys. The record, though sketchy, indicates that defendant did not object to Jarrin's taking over for Kopp as defendant's counsel. Defendant's testimony is silent on this matter, while Jarrin and Kopp both stated that defendant agreed to the change. For

purposes of a speedy-trial question, a delay is charged to the accused where his act in fact causes or contributes to the delay. (*Reimolds*, 92 Ill. 2d at 106.) We determine that defendant's acquiescence to Jarrin's serving as his attorney contributed to his trial's delay.

We agree with the appellate court in the case at bar that Jarrin's need for a continuance was not due to any overt actions by defendant. However, Jarrin could not have given defendant competent counsel without more time to prepare for trial. The appellate court has repeatedly held that the delay a continuance causes is properly charged to an accused where his counsel required more time to prepare for trial. (*People v. Eddington* (1978), 64 Ill. App. 3d 650, 653; *People v. Williams* (1976), 37 Ill. App. 3d 151, 155-56; *People v. Ford* (1975), 34 Ill. App. 3d 79, 82-83; *People v. Carr* (1972), 9 Ill. App. 3d 382, 383-84; *People v. Steele* (1970), 127 Ill. App. 2d 366, 369-71.) In *Carr*, counsel for the defendant stated that he needed more time for preparation and desired a continuance. The State concurred. The defendant, present in the courtroom, demanded an immediate trial despite his counsel's representations. The trial judge, however, granted the continuance. The appellate court in that case determined that the trial court's actions were proper and that the speedy-trial act had not been violated. The *Carr* court based its holding on the premise that, had the trial court acceded to the accused's demand for a trial, the question on appeal would surely have been whether the accused had enjoyed the effective assistance of counsel. Also, the *Carr* court noted that the accused never objected to the appointment of his attorney, but only to the attorney's trial strategy. (*Carr*, 9 Ill. App. 3d at 383-84.) The situation in *Carr* is comparable to the instant case, in that defendant never objected to Jarrin's appointment, but only to the filing of the motion to continue in order to have more time to prepare. Unlike the accused

in *Carr*, defendant did not contemporaneously object to the trial strategy of which he disapproved. If an in-court, contemporaneous objection to the motion to continue is not enough to toll the speedy-trial period, an objection which occurred two months later surely cannot be. Accordingly, we find that defendant cannot now claim that he had nothing to do with the delay caused by his motion for a continuance.

We also dispute the trial court's and appellate court's application of the law regarding attorney-client relations to the case at bar. The general rule in Illinois is that a client is bound by the acts or omissions of his lawyer-agent. While not an ironclad rule, it is necessary in order for a representative system of litigation to function. (*People v. Brown* (1968), 39 Ill. 2d 307, 310.) In criminal proceedings, an attorney is authorized to act for his client and determine for him procedural matters and decisions involving trial strategy and tactics. (*People v. Williams* (1966), 36 Ill. 2d 194, 204-05; *People v. Wilkerson* (1984), 123 Ill. App. 3d 527, 532; *United States v. Culver* (D. Md. 1963), 224 F. Supp. 419, 438; 7A C.J.S. *Attorney & Client* §208 (1980).) Thus, the affirmative acts of a defendant's counsel cannot be separated from the defendant's own acts. For example, this court has held that when an accused's attorney fails to appear in court at the appointed time, the delay caused by the attorney's absence is attributable to that defendant. *People v. Hairston* (1970), 46 Ill. 2d 348, 354.

Indeed, this court has repeatedly relied on these principles when determining whether an accused's motion for continuance is chargeable to him under the speedy-trial act, and has held that where a public defender requests a continuance on behalf of a defendant, such a continuance is delay attributable to the defendant for purposes of tolling the statutory speedy-trial period. (*People v. Young* (1970), 46 Ill. 2d 82, 84; *People v. Rog-*

*ers* (1963), 26 Ill. 2d 599, 602; *People v. Clark* (1959), 17 Ill. 2d 486, 492; *People v. Richardson* (1959), 17 Ill. 2d 253, 258; see *People v. Benjamin* (1966), 34 Ill. 2d 183, 185 (same principle applied to private counsel); *People v. Tillman* (1963), 26 Ill. 2d 552, 554 (same); *People v. Ephraim* (1959), 17 Ill. 2d 527, 528 (delay was result of proceedings "at [defendant's] insistence or conducted in his behalf").) The case at bar is strikingly similar to our decision in *People v. Siglar* (1971), 49 Ill. 2d 491. In *Siglar*, we determined that where appointed counsel moves for an indefinite continuance, there is a delay occasioned by the defendant under the speedy-trial statute. *Siglar*, 49 Ill. 2d at 496.

We also note that the record need not always affirmatively show that when an attorney requests or agrees to a continuance, he has consulted with and received the advice of the accused, because such a rule would intolerably burden the trial courts. (*People v. Eddington* (1978), 64 Ill. App. 3d 650, 653.) For example, in *People v. Woods* (1963), 27 Ill. 2d 393, 395-96, this court held that a defendant is bound by his counsel's request for a continuance, even if the request is made in the accused's absence. This is because an ordinary, uncontested motion for a continuance does not involve rights of the accused of such a substantial nature as to invalidate the actions that occur without the accused's express consent. (*Woods*, 27 Ill. 2d at 395; see generally Fed. R. Crim. P. 43 (detailing the times in a criminal proceeding when a defendant must be present); *United States v. Lynch* (3d Cir. 1942), 132 F.2d 111, 113 (defendant need not be present at hearings on motions made prior to trial).) The *Woods* court further noted that even if the opposite were true, the right of an accused to be present at a hearing upon a motion for a continuance may be waived by the defendant, or by his counsel on his behalf. Although *Woods* did not deal with a speedy-trial question, we find

its analysis helpful in characterizing the nature of the attorney-client relationship when counsel is appointed to represent a criminal defendant.

Applying these principles to the case at bar, we hold that defendant cannot claim that his action, or lack thereof, did not contribute to the delay caused by Jarrin's filing of the motion for a continuance on his behalf. Defendant has not overcome the presumption that Jarrin was acting on defendant's authorization. We have already discussed how the record indicates that defendant recognized Jarrin as his attorney, and acquiesced in Jarrin's replacing Kopp as defendant's counsel. We further note that a party who does not promptly repudiate an attorney's unauthorized act upon receiving knowledge of such an act has effectively ratified the act. (See generally *Stark v. Starr* (1877), 94 U.S. 477, 24 L. Ed. 276 (discussing a party's ratification of an attorney's unauthorized acts); *Robb v. Vos* (1894), 155 U.S. 13, 39 L. Ed. 52, 15 S. Ct. 4 (party who accepts benefits of attorney's actions is estopped from denying attorney's authority to act on his behalf); *United States v. Texas* (E.D. Tex. 1981), 523 F. Supp. 703, 711 (client's failure to protest an unauthorized settlement in timely manner serves to ratify attorney's actions); *Yarnall v. Yorkshire Worsted Mills* (1952), 370 Pa. 93, 96, 87 A.2d 192, 193 (failure to promptly repudiate an attorney's unauthorized act serves as a ratification); see also *United States v. Russo* (D.N.J. 1982), 550 F. Supp. 1315, 1321 (defendant should be estopped from claiming denial of speedy-trial rights when continuance was granted at defense counsel's request out of concern for defendant's ability to receive fair trial and have effective assistance of counsel).) Defendant's delay in objecting to the allegedly unauthorized waiver of his speedy-trial right through Jarrin's filing of a motion for continuance was also a factor contributing to the delay the motion to continue caused.

To hold otherwise would force every trial court to inquire into every chargeable delay to determine whether an accused personally agreed to a continuance, or at least whether the accused waived his right to appear at the hearing. (See 180 Ill. App. 3d at 760 (Heiple, J., dissenting).) To affirm the appellate court's judgment might allow every accused whose attorney's actions cause the delay of a trial to escape trial and conviction through a questionable application of the speedy-trial statute. The dissent to the appellate court's opinion suggested the example of an accused who moves for a continuance in order to have more time to complete discovery. If the continuance is granted, the accused could argue that the reason more time was needed for discovery was the State's lack of cooperation in furnishing information. Then, after the 120-day period expires, the accused could move for dismissal because the delay was not occasioned by him. (180 Ill. App. 3d at 760 (Heiple, J., dissenting).) Such a result is abusive, unfair, and illogical.

We also find the *Roberts* case, apparently heavily relied upon by the appellate court, to be distinguishable from the case at bar. *Roberts*, and the case it relied upon, *People v. Collum* (1981), 98 Ill. App. 3d 385 (*Roberts*, 133 Ill. App. 3d at 738), both dealt with public defenders who withdrew because of a conflict of interest. (*Roberts*, 133 Ill. App. 3d at 736; *Collum*, 98 Ill. App. 3d at 387.) Both the *Roberts* and the *Collum* courts determined that the delay was not due to the direct results of the accused's own actions, such as when the accused himself requests that the public defender withdraw. (*Roberts*, 133 Ill. App. 3d at 737 (citing *People v. Oakley* (1982), 109 Ill. App. 3d 165, 168-69); *Collum*, 98 Ill. App. 3d at 387 (citing *People v. McKinney* (1978), 59 Ill. App. 3d 536).) The appellate court held that *Roberts* was on point with the case at bar. 180 Ill. App. 3d at 758.

However, the facts in the case at bar are not similar. Where an attorney has a conflict of interest with the party he represents, both the attorney and the accused have no choice. The attorney must withdraw, and the accused must obtain another attorney or have new counsel appointed. (See 107 Ill. 2d Rules 2—110(b), 5—101 through 5—105.) Therefore the conclusion of the *Roberts* case is logically sound. However, the record in the case at bar involves an appointed attorney who voluntarily withdrew and, in cooperation with the public defender's office, supplied defendant with a replacement attorney. The record reveals that defendant did not object to this change of counsel. Technically, defendant could have objected to Jarrin's representation, or at least raised the issue of Jarrin's authority to act on defendant's behalf after defendant discovered that Jarrin had moved for a continuance which defendant allegedly had not asked for or acquiesced to. The record bears out that defendant objected only to Jarrin's trial strategy, not to the fact that Jarrin served as his attorney. Thus, the *Roberts* case is factually distinguishable from the case at bar. See *Carr*, 9 Ill. App. 3d at 384 (defendant never discharged attorney, but only objected to trial tactics).

In order to show that he could not have made an informed decision involving the change of attorneys, defendant raises the issue of Kopp's alleged failure to comply with Supreme Court Rule 13(c). Rule 13(c) provides in pertinent part:

"(2) *Notice of Withdrawal.* An attorney may not withdraw his appearance for a party without leave of court and notice to all parties of record, and, unless another attorney is substituted, he must give reasonable notice of the time and place of the presentation of the motion for leave to withdraw *** to the party represented by him ***.

(3) *Motion to Withdraw*. The motion for leave to withdraw shall be in writing and, unless another attorney is substituted, shall state the last known address of the party represented. The motion may be denied by the court if the granting of it would delay the trial of the case, or would otherwise be inequitable." 107 Ill. 2d R. 13(c).

Defendant specifically cites to the trial court's order and opinion, which stated, "Had a Motion to Withdraw been considered by the court, it very probably would have been denied and Attorney Kopp would have continued his representation of the defendant either at the expense of Rock Island County or on a pro bono basis." Defendant further notes that Kopp testified that if he had kept defendant's case he would have been ready to go to trial on November 23, 1987. Defendant appears to be implying that Kopp's departure from Rule 13(c)'s guidelines indicates that Kopp's lack of competence resulted in the need for a continuance, and is thus delay chargeable to the State.

We cannot agree with this conclusion. The statement by the trial court—that, had the Rule 13 motion been filed, it would have been denied—is mere conjecture. (See *People v. Williams* (1974), 59 Ill. 2d 402, 408 (claim of prejudice cannot be based on mere conjecture).) We do agree that Rule 13(c) requires a written motion when an attorney is withdrawing from a case. But we also note that formal procedures may be waived if it appears that the court has considered the merits of the motion. (*Vogelsang v. Credit Life Insurance Co.* (1970), 119 Ill. App. 2d 67, 72-73.) Although the record in the case at bar is sketchy at best, it is apparent that the trial court did not consider Jarrin's appearance on defendant's behalf in a vacuum. The record indicates that all the requirements of Rule 13(c) were met except for Kopp's formal written motion to withdraw—including the fact that defendant

received notice that Kopp was withdrawing, with Jarrin taking his place. Also, Jarrin apparently explained orally to the trial judge the reasons for needing more time, which would have included an explanation of Kopp's withdrawal. Because the trial court granted Jarrin's motion, it appears the court fully considered the merits of the Rule 13(c) issues. Further, as we have already stated, the record indicates that defendant substantially contributed to the reason for the motion to continue in the first place.

We also disagree with the appellate court's determination that the events in the case at bar placed defendant in a compromising position. The appellate court characterized defendant's situation as a choice between going to trial with an unprepared attorney or forgoing the right to a speedy trial. (180 Ill. App. 3d at 758.) The trial court, in its order and opinion, expressed concern over defendant's being forced to sacrifice his right to a speedy trial for the sake of having a prepared attorney. However, this court has held that the due process rights of defendants are not denied when they are forced to choose between the two constitutional rights of speedy trial and effective assistance of counsel. (*People v. Lewis* (1975), 60 Ill. 2d 152, 156-57; *People v. Williams* (1974), 59 Ill. 2d 402, 405-06.) We stated in *People v. Johnson* (1970), 45 Ill. 2d 38:

> "To argue that he was forced to choose as he did is to argue technicalities. The right to a speedy trial and the right to avoid a precipitous trial are separate but related rights. Both are designed to assure an accused a fair trial, to prevent undue delay in one instance and undue haste in the other. He can demand action or avoid action as the exigencies of his situation may dictate. But fairness and justice are not a one-way street. Society is likewise entitled to a fair administration of justice and the measure of right and wrong must always be that which is fair, not that which is technically astute or contrived. The

fact that on occasion the accused might have to jeopardize the legislative benefits of the [speedy-trial] rule by asserting his right to a continuance does not entail a denial of his right to a speedy trial." *Johnson*, 45 Ill. 2d at 43-44.

Therefore, we see no compromise in this situation at all. Instead, the appellate court has placed parties such as defendant in a "no-lose" situation. (180 Ill. App. 3d at 760 (Heiple, J., dissenting).) Had defendant chosen to go to trial on November 23, 1987, and lost, his claim on appeal might have been ineffective assistance of counsel. In all likelihood, Jarrin's motivation for suggesting and actually moving for the continuance was to avoid that very situation. Instead, because defendant was "fortunate" enough to have an appointed attorney who was overburdened to the point that a continuance was necessary for him to adequately prepare for trial, defendant was able to exploit his constitutional right to a competent attorney and escape all charges through the technical application of the speedy-trial statute. (See *United States v. Russo* (D.N.J. 1982), 550 F. Supp. 1315, 1321 (defendant should be estopped from claiming denial of speedy-trial rights when defense counsel's request for a continuance was granted out of concern for defendant's ability to receive fair trial and have effective assistance of counsel).) The court "should not allow the defendant to have it both ways." (180 Ill. App. 3d at 761 (Heiple, J., dissenting).) Defendant cannot contend that it was unfair to force him to choose between a speedy trial and effective assistance of counsel. Defendant may have a right, even of constitutional dimensions, to pursue whichever course he chooses, but the Constitution does not forbid requiring him to choose nonetheless. *Lewis*, 60 Ill. 2d at 156-57.

We therefore hold that because the record indicates that defendant did not establish a violation of his speedy-

trial rights, and also because the weight of precedent in this area is contrary to the trial court's ruling, the granting of defendant's motion to dismiss for violation of his speedy-trial rights was an abuse of discretion.

Finally, defendant claims that even if we impute to him the delay which the motion to continue caused, the State still failed to bring him to trial within the 120-day speedy-trial period. Under the provisions of the speedy-trial act, any delay occasioned by an accused suspends the speedy-trial period only for the time of the delay. (*People v. Donalson* (1976), 64 Ill. 2d 536, 540.) Defendant contends that on the date the motion to continue was made, there were 16 days left in the 120-day speedy-trial period, which commenced on the date he was taken into custody and would otherwise have run on December 4, 1987. The trial court's order and opinion offered several points of reference where it might possibly interpret the tolled time period to begin running again:

(1) There was a 5-day period between the granting of the motion to continue on November 18 and the original trial date of November 23—meaning that the 120-day period would have run on December 9, if we added 5 days to the 120-day period which began on the date of defendant's incarceration.

(2) The record indicates that both Kopp and Jarrin told defendant the delay would last "30-60 days"—meaning that the 120-day period would have run, at the latest, on February 2, 1988, if we added 60 days to the 120-day period which began on the date of defendant's incarceration.

(3) Defendant's letter to the chief judge could be interpreted as a demand for trial—meaning that the 120-day period would have run on February 11, 1988, if we determined that the 120-day period was

tolled on November 18 and resumed on January 26, the date the letter was filed with the trial court.

However, it was not until February 18, 1988, that attorney Coppula appeared in court to represent defendant and, though the record is unclear on this point, to have a trial date set for February 22.

We note that it is the State's duty to bring a defendant to trial within the speedy-trial period. (*Reimolds*, 92 Ill. 2d at 106.) Defendant argues that February 18 and 22, 1988, are well beyond the end of the alternative speedy-trial periods that the trial court established, and further states that there is no Illinois authority that would allow any court to hold that a defendant's motion that interferes with a trial date can be considered an indefinite continuance. *People v. McKinney* (1978), 59 Ill. App. 3d 536, 539.

Defendant ignores the *Siglar* decision, which the *McKinney* court specifically discussed (*McKinney*, 59 Ill. App. 3d at 539). In *Siglar*, the accused was scheduled to go to trial on February 24. On February 20, the accused filed a motion to continue the case indefinitely. On the same day, the court allowed the accused 30 days in which to file pretrial motions. On April 18, this 30-day order was also indefinitely continued, with all parties in agreement. The case was finally scheduled for trial September 15. The *Siglar* court held that the speedy-trial term had been tolled by the indefinite continuances. (*Siglar*, 49 Ill. 2d at 496-97.) Thus, a delay from late February to mid-September due to the defendant's motion to indefinitely continue the trial did not amount to a speedy-trial violation. See *People v. Williams* (1949), 403 Ill. 429, 432 (defendant agreed to an indefinite continuance; court held speedy-trial statute did not apply).

We agree with the *Siglar* court that indefinite continuances are not good practice. (See *Siglar*, 49 Ill. 2d at

497.) But this does not change the fact that the trial court in the case at bar allowed such a motion. The time period in the case at bar (late November to mid-February) is similar to the time allowed for in *Siglar*.

Also, the *McKinney* and *Siglar* cases are factually inapposite. *McKinney* involved a motion to dismiss, not a motion to continue. (*McKinney*, 59 Ill. App. 3d at 539.) Specifically, the *McKinney* court distinguished *Siglar* for the very reason we cite it in support of our decision in this case: the defense counsel in *Siglar* specifically requested an indefinite continuance. The *McKinney* court's statement that "[no] motion by defendant which interferes with a trial date is to be considered an indefinite continuance" (*McKinney*, 59 Ill. App. 3d at 539) applies to situations where the motion in question is *not* a motion to continue, but the court's disposal of that motion requires a delay in bringing the accused to trial. In such a situation, if the State fails to set a new trial date, the *McKinney* decision would charge the delay to the State. *McKinney*, 59 Ill. App. 3d at 539-40.

Only a demand from defendant could have alerted the State that he was ready and willing to go to trial. The only act on the record we could possibly interpret as such is defendant's letter to the chief judge. However, if we interpret this letter as a trial demand, a second letter from defendant to the chief judge, postmarked January 30, 1988, and filed with the court on February 11, raises another issue of speedy-trial delay. In that letter, defendant claimed that Jarrin's representation of him was incompetent. This claim presaged the hearing of February 18, where Jarrin withdrew and Coppula replaced him. Consequently, if we interpret the first letter to the chief judge as a trial demand, as defendant claims, we could also interpret the second letter as a demand for a new attorney. This would be a further delay occasioned by defendant, not resolved until February 18. In this line of

152

reasoning, defendant's new trial date of February 22 was within the 120-day period.

For these reasons the judgments of the circuit and appellate courts are reversed, and the cause is remanded to the circuit court of Rock Island County for trial.

*Judgments reversed;*
*cause remanded.*