NOTICE
Decision filed 12/30/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240190-U

NOS. 5-24-0190, 5-24-0191 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Jackson County. |
| v. | ) ) | Nos. 22-CF-209, 22-CF-210 |
| DEMARCUS O. JONES, | ) ) ) | Honorable Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Presiding Justice Cates and Justice McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's convictions are reversed for a violation of his statutory speedy-trial rights where the delays attributed to defendant were due to a codefendant's need for conflict-free counsel.

¶ 2    In Jackson County case No. 22-CF-209, defendant, Demarcus O. Jones, was charged with one count of unlawful use of weapons by a felon, one count of aggravated unlawful use of a weapon, and one count of resisting or obstructing an officer. In Jackson County case No. 22-CF-210, defendant was charged with three counts of aggravated discharge of a firearm and one count of violation of bail bond. The State successfully joined the cases for trial, and defendant was convicted of several charges following a jury trial. On direct appeal, defendant raises numerous arguments. Defendant contends as follows: (1) he was denied his statutory right to a speedy trial; (2) the evidence was insufficient to support a conviction for aggravated discharge of a firearm;

1

(3) the trial court erred by denying defendant's motion to sever the charges of unlawful use of a weapon by a felon from the remaining charges; (4) he was deprived of a fair trial by the State referencing "gangs" during closing argument; and (5) the trial court improperly collapsed the three-step *Batson* inquiry into a single step during *voir dire*. For the following reasons, we find that defendant's statutory right to a speedy trial was violated and reverse defendant's convictions.

¶ 3                                    I. BACKGROUND

¶ 4      This recitation of the facts includes only those necessary to resolve this appeal. We will recite additional facts in the analysis section as needed to address the specific arguments of the parties.

¶ 5      In case No. 5-24-0191 (22-CF-210), defendant was charged by a first amended information with three counts of aggravated discharge of a firearm (counts 1-3), Class 1 felonies, in violation of section 24-1.2(a)(2) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.2(a)(2) (West 2020)) and one count of violation of bail bond due to possession of a firearm (count 4), a Class 4 felony, in violation of section 32-10(a-5) of the Code (*id.* § 32-10(a-5)). These charges arose from an incident that occurred in downtown Carbondale on April 30, 2022.

¶ 6      In case No. 5-24-0190 (22-CF-209), defendant was charged with one count of unlawful use of a weapon by a felon (UUWF) (count 1), a Class 2 felony, in violation of section 24-1.1(a) of the Code (*id.* § 24-1.1(a)); one count of aggravated unlawful use of a weapon (AUUW) (count 2), a Class 2 felony, in violation of section 24-1.6(a)(1), (a)(3)(A-5) of the Code (*id.* § 24-1.6(a)(1), (a)(3)(A-5)); and one count of resisting or obstructing a peace officer (count 3), a Class A misdemeanor, in violation of section 31-1(a) of the Code (*id.* § 31-1(a)). These charges arose from a traffic stop on May 1, 2022, the day after the incident in Carbondale.

2

¶ 7    On the State's motion, defendant's cases were tried together, along with the cases involving his codefendants, Charleton Josh Patterson (Josh) and Simeon C. Patterson (Simeon). In 22-CF-209, the jury found defendant guilty of one count of UUWF (count 1), one count of AUUW (count 2), and one count of resisting a peace officer (count 3). In 22-CF-10,[1] the jury found defendant guilty of three counts of aggravated discharge (counts 1-3).

¶ 8    The evidence at trial demonstrated that in the early morning hours of April 30, 2022, a large number of people (50-100) gathered in parking lots in downtown Carbondale. The police responded to a call for shots being fired. Due to the large number of people relative to the number of police officers, the scene was not secured. On the scene, police recovered a total of 7 .40-caliber shell casings and 10 9-millimeter shell casings. Police also recovered a cell phone with notifications appearing to be addressed to Josh. Several identification cards for Josh, including a current driver's license, were found inside the cell phone case. Police also recovered a white ski mask, rolled up at the bottom, and resembling a cap.

¶ 9    The parking lots were under video surveillance, and the police reviewed video footage of the incident. Three suspects were identified from the video, all wearing plain white t-shirts. One suspect wore a white ball cap, one wore a black ball cap, and one wore a white beanie-style cap. Carbondale Police Lieutenant Jarin Dunnigan testified that he reviewed a Snapchat video that was sent to the police. The video helped him identify individuals who were present at the time of the shooting. He also reviewed the parking lot videos, which he believed showed the individuals present in the Snapchat video. The investigation ultimately focused on defendant and his codefendants, Josh and Simeon.

---

[1]Count 4 was severed prior to trial.

¶ 10 On May 1, 2022, Jackson County Deputy Nicholas Henderson conducted a traffic stop on a tan Chevy sedan. Henderson knew that the Carbondale police were looking for defendant and Simeon. He stopped the vehicle because neither the driver nor the passenger wore seatbelts. The car stopped at a Circle K gas station. The occupants exited and locked the vehicle. The occupants started to go inside the gas station when Henderson told them to stop. They complied. Henderson went to high school with Simeon and thought the driver (later identified as Josh) looked like Simeon. The passenger, later identified as defendant, fled the scene but was apprehended shortly thereafter.

¶ 11 After defendant and Josh were taken into custody, the police conducted what they characterized as an inventory search of the car. Two loaded firearms were recovered: one from under the driver seat, the other from under the passenger seat. Subsequent lab testing tied the firearms to the scene of the shooting.

¶ 12 Following his arrest, defendant's bond was set at $750,000 in Jackson County case No. 22-CF-210 and $100,000 in Jackson County case No. 22-CF-209. Defendant remained in custody while his cases were pending.

¶ 13 On May 2, 2022, the Jackson County Public Defender was appointed to represent defendant. On May 4, 2022, Courtney Jackson, an assistant public defender with the Jackson County Public Defender's office, entered her appearance in each of defendant's cases.

¶ 14 Defendant's cases were set for a preliminary hearing on May 17, 2022. At the preliminary hearing, defendant waived an arraignment, entered pleas of not guilty to all counts, and demanded a jury trial. The matters were set for a final pretrial conference on May 31, 2022, a status hearing on August 25, 2022, and a jury trial on August 29, 2022.

¶ 15    Defendant filed motions to reduce his bond in each case. A hearing on these motions was conducted on May 25, 2022. The bonds remained unchanged. After the trial court announced its ruling, the following colloquy occurred:

"THE DEFENDANT: This don't mess up my 120, do it?

THE COURT: Nope, not at all. Have a good day, Mr. Jones. Good question. Bye."

¶ 16    On June 22, 2022, the Jackson County Public Defender filed a motion to withdraw as counsel for defendant in both cases due to the discovery of an internal conflict. On June 29, 2022, the motion to withdraw was granted, and Daniel Klingemann was appointed to represent the defendant.

¶ 17    Klingemann entered his appearance on behalf of the defendant on July 1, 2022. On July 15, 2022, Klingemann requested that the trial court appoint a new attorney for the defendant due to an upcoming change in his employment. Klingemann also requested that the jury trial date of August 29, 2022, remain set. An August 3, 2022, docket entry by the trial court indicates that Klingemann left his position of employment and was allowed to withdraw as counsel for the defendant. Matt Foster was appointed to represent the defendant in all of his pending Jackson County cases. Foster entered his appearance on behalf of the defendant on August 12, 2022.

¶ 18    The State filed a motion for joinder on August 19, 2022. In its motion, the State asked the trial court to join defendant's case with those of his codefendants, Josh and Simeon. On August 22, 2022, a status hearing was held, and Foster appeared as attorney for defendant and requested that the trial date remain as scheduled on August 29, 2022.

¶ 19    A consolidated hearing on "all pending motions" was scheduled for August 25, 2022, in defendant's cases and those of his codefendants. At the beginning of the hearing, the trial court identified the following pending motions: (1) the State's motion for joinder, (2) a motion for

sanctions filed by Simeon, (3) a motion from Celeste Korando to withdraw as counsel for Simeon, and (4) a motion to continue that was filed in Josh's cases.

¶ 20    After announcing the pending issues, the trial court asked defendant's counsel, Foster, if he was "up to speed on things and ready to proceed today?" Foster told the court that the file he received from prior counsel a week and a half earlier did not contain discovery. Foster explained to the trial court that he was in "an ethical quandary" since he would have such a short amount of time to prepare for trial, but that defendant insisted on proceeding to trial and did not want to give up his speedy-trial rights. For this reason, Foster had not filed a motion to continue the case.

¶ 21    Next, the trial court inquired regarding the pending motion to continue[2] filed in Josh's case. The trial court asked Josh's attorney, Alex Enyart, if he had anything to add since the prior hearing. Enyart said that "it would be beneficial to [Josh] to have more time to prepare" but that he was maintaining a "speedy trial posture."

¶ 22    Next, the trial court addressed the motion for sanctions. Simeon's attorney, Celeste Korando, had a pending motion for sanctions against the State. Korando stated that she had just learned that one of her juvenile clients had been interviewed the prior week in connection with the case. She also told the trial court that Simeon had told her the day before that yet another of her clients, Cody Dempsey, had been subpoenaed to testify at trial. Korando advised that she was unaware that he had given a statement regarding this case, because nothing in the discovery purported to include a statement from this client. She asked the court to sanction the State by precluding it from calling the two witnesses at trial.

---

[2]Enyart filed a motion to continue on August 15, 2022, prior to the State's motion to join the defendants. At the August 22, 2022, hearing on the motion to continue, Josh appeared and told the court that he was objecting to the continuance. The trial court deferred ruling on the motion to continue, noting that the matter was set for a hearing on the State's motion to join three days later.

¶ 23 The State responded that it was the defendants' own actions that put them in this situation, and that the discovery tendered to the defendants demonstrated that Dempsey was "on the radar" for the defense. Since Dempsey recently indicated a willingness to cooperate with the State, the State argued that Dempsey placed the defense in that position. Regarding Korando's juvenile client, the State explained that the juvenile contacted the State the week before and requested to speak with detectives regarding the case.

¶ 24 Without ruling on Korando's motion for sanctions, the trial court then considered the State's motion for joinder. After hearing argument, the court granted the motion over the objections of all three defendants. The court denied Korando's motion for sanctions. Given that this created a conflict of interest for Korando, she sought to withdraw as counsel for Simeon. The court granted her motion to withdraw. Simeon requested that an attorney be appointed immediately, stating that he was ready to proceed to trial the following Monday. The trial court stated the following:

> "THE COURT: Gentlemen, I'll note all of your demands. That you're ready for trial, you want to go to trial. You [Simeon] don't have counsel though. *** Based upon that, I'm inclined to vacate this trial date, reset it over within a short period of time. Any delay to one defendant will be joined as a delay to all defendants."

The judge then announced, "I'm going to vacate the trial dates."

¶ 25 The trial court asked Enyart if he had anything else for the record. Enyart replied, "Judge, we would object and also based on my client's request, I would like to make an oral motion to withdraw the motion to continue." The judge responded, "Okay. That will be noted. Certainly."

¶ 26 The trial court asked Foster if he had anything to add for the record. Foster stated:

> "The only other thing I would mention is in vacating the trial setting with concerns about speedy trial, and although I haven't produced it in writing because, obviously, we were expecting we were proceeding next week, if I make an oral motion for my client to be released on his own recognizance, because he already is out on his own recognizance in the previous case, otherwise, I think we may climb in the face of speedy trial issues.

7

I can certainly understand [Simeon's] concern. I don't represent him, but certainly since the matters have been joined, it has somewhat of a prejudicial effect because one person doesn't have counsel and now my client can't proceed or [Josh]. If I need to reduce it to a written motion so the People can more adequately respond, I can certainly do that in the next day or so and have it decided as quickly as possible, but I would at least like the record to reflect, because my client has asked me to request this as well, since we aren't proceeding next week and the trial setting has been vacated, I think his 120 days would have lapse [*sic*] Sunday or Monday without knowing the exact days. I would make an oral motion for his release because he is out on bond."

Due to the similar situation, Enyart made the same motion on behalf of Josh. The State objected to the defendants' release from custody. The trial court ruled, "We'll find that the delay to one Defendant's [*sic*] a delay to all Defendants in this situation. We are going to vacate the trial settings." The court also denied the "oral motions to recog," and noted that formal written motions could be filed and considered at a later date.

¶ 27    Following the hearing, that same afternoon, Enyart filed a motion to withdraw as Josh's attorney. In the motion, Enyart stated that the State provided him with discovery that same day, and that the newly tendered discovery listed Jerome Snowden Jr. as a witness. The motion further stated that Enyart represented Snowden, and that the contemporaneous representation of Snowden and Josh created a conflict of interest.

¶ 28    On August 26, 2022, Foster filed a motion to dismiss the charges against defendant for failure to bring both cases to trial within 120 days. The motion was set for a hearing on September 12, 2022, and a jury trial date was set for October 3, 2022.

¶ 29    On August 29, 2022, the trial court appointed attorney Kacey Eisenhauer to represent Simeon. On August 30, 2022, the court set Enyart's motion to withdraw for a hearing on September 12, 2022. At the same time, the court set all three defendants' cases for a status hearing on September 26, 2022.

8

¶ 30    At the outset of the September 12, 2022, hearing, Enyart explained that he had a conflict of interest since he discovered that he was representing Stone, who was shot during the incident that led to charges against Josh. The court granted Enyart's motion to withdraw as counsel and appointed attorney Andrew Wilson to represent Josh. The court kept the October 3, 2022, jury setting and authorized the public defender's office to turn its file over to Wilson "to get him up to speed quicker on your case, so that the October 3rd trial date will be meaningful for you in this case." When Josh asked whether his "120 days is restarted," the court told him that the speedy-trial date was tolled until October 3.

¶ 31    Next, the trial court heard defendant's motion to dismiss which argued that none of the delays were necessitated by defendant, but were due to conflicts that various attorneys had with the party they represented. Foster argued that none of the continuances were at the request of defendant. The trial court denied the motion to dismiss.

¶ 32    On September 22, 2022, Josh's new attorney, Andrew Wilson, filed a motion to withdraw as counsel. In the motion, Wilson alleged that representing Josh would place an unreasonable financial burden on his private practice.

¶ 33    The trial court held a status hearing on September 26, 2022. At the outset, the court provided a brief history of the case, including that the prior jury trial setting had been vacated over the objection of all three defendants. The court noted Wilson's pending motion to withdraw due to the hardship the case would have on his practice. Wilson's motion to withdraw was denied. Simeon's newest attorney, Eisenhauer, orally moved to withdraw as counsel, citing a *per se* conflict of interest. The court granted Eisenhauer's motion to withdraw.

¶ 34    The trial court told Simeon that new counsel would need to be appointed to represent him. Simeon asked the trial court if he could file a motion to sever his charges from those of his

codefendants. The trial court noted that Simeon asked for an attorney, and that he could raise this issue with his new attorney. Simeon said that he would go to trial on his own next week and asked why his case kept getting "pushed back." The trial court explained that the case was being reset "because you folks are altogether on the same case." Simeon again stated that he would like to go to trial on his own, and the court stated, "If we go to trial, the cases were already joined, we'll be going to trial together, all three of you." The court concluded that it had no choice but to vacate the trial setting, and it did so while again noting defendants' objections. The court did not set a new trial date.

¶ 35    The trial court held a status hearing on October 4, 2022. Daniel Kay was appointed to represent Simeon. Noting the defendants' ongoing objections to having their cases continued, the trial court set the matter for pretrial on October 25, 2022; a case management conference on December 2, 2022; a status hearing on January 9, 2023; and, finally, a jury trial on January 17, 2023. The trial court noted that "all delay is to the defendants under the circumstances."

¶ 36    On October 19, 2022, defendant, through Foster, filed motions to sever his cases from those joined with the codefendants. The trial court set the motion for a hearing on November 17, 2022, and denied it following the hearing. The jury trial remained scheduled for January 17, 2023.

¶ 37    A status hearing was conducted on January 9, 2023. At that time, defendant again raised a speedy-trial objection. On January 9, 2023, defendant filed a motion to sever the UUWF and violation of bail bond charges from the trial. The trial court ruled that count 4, violation of bail bond by possessing a firearm, would be severed in Jackson County case No. 22-CF-210, but denied the motion to sever the UUWF charge.

¶ 38    The jury trial commenced on January 17, 2023. On January 30, 2023, the jury found defendant guilty of one count of UUWF (count 1, 22-CF-209), one count of AUUW (count 2, 22-

10

CF-209), one count of resisting a peace officer (count 3, 22-CF-209), and three counts of aggravated discharge (counts 1-3, 22-CF-210).

¶ 39    On February 15, 2023, defendant filed a motion to vacate, or in the alternative, a motion for a new trial, raising several claims of error. Defendant's motion to vacate, or for a new trial, was denied on January 24, 2024. The same day, the trial court sentenced the defendant to 12 years' imprisonment for the convictions in 22-CF-209, which merged together. The trial court sentenced the defendant to a concurrent term of nine years' imprisonment for the aggravated discharge convictions in 22-CF-210, with the three counts merging together.

¶ 40    Defendant filed a timely notice of appeal in both cases on February 5, 2024.

¶ 41                                    II. ANALYSIS

¶ 42    Defendant raises several issues on appeal. However, we need only address defendant's claim that his speedy-trial rights were violated. Defendant's argument that his statutory speedy-trial rights were violated is straightforward: despite defendant consistently telling the trial court that he wanted to exercise his right to a speedy trial, his matters were twice continued over his objection due to circumstances beyond his control. These delays caused defendant's trial to be set outside the 120-day statutory limit. For these reasons, defendant argues that the trial court abused its discretion by attributing to him the delay caused by the court's need to find conflict-free counsel for Simeon. The State has filed a confession of error. We find the defendant's contentions and the State's concession to be well-taken and grant the requested relief. We therefore reverse defendant's convictions. Since we find this issue dispositive, we address only defendant's claim that his speedy-trial rights were violated and need not address his remaining arguments on appeal.

¶ 43    Section 103-5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(a) (West 2020)) implements a right guaranteed by the federal and Illinois Constitutions (U.S. Const.,

11

amends. VI, XIV; Ill. Const. 1970, art. I, § 8). Although the constitutional and statutory provisions address similar concerns, the rights they establish are not necessarily coextensive. *People v. Bowman*, 138 Ill. 2d 131, 136 (1990) (citing *People v. Garrett*, 136 Ill. 2d 318, 323 (1990); *People v. Richards*, 81 Ill. 2d 454, 459 (1980)). The statute is to be liberally construed, and each case is decided on its own facts. *Bowman*, 138 Ill. 2d at 136-37 (citing *People v. Jones*, 104 Ill. 2d 268, 273-74 (1984); *People v. Reimolds*, 92 Ill. 2d 101, 106 (1982)). Section 103-5(a) states that every person in custody for an alleged offense shall be tried within 120 days from the date he is taken into custody unless delay is occasioned by the defendant. 725 ILCS 5/103-5(a) (West 2020). Every person not tried in accordance with section 103-5(a) must be discharged from custody and is entitled to have the charges dismissed. *Id.* §§ 103-5(d), 114-1(a)(1); *Bowman*, 138 Ill. 2d at 137 (citing *Richards*, 81 Ill. 2d at 459). "For purposes of a speedy-trial question, a delay is charged to the accused where his act in fact causes or contributes to the delay." *Bowman*, 138 Ill. 2d at 139-40 (citing *Reimolds*, 92 Ill. 2d at 106). When pursuing a motion to dismiss for speedy-trial violation, the defendant has the burden of affirmatively establishing the violation. *Id.* at 137 (citing *Jones*, 104 Ill. 2d at 280; *Reimolds*, 92 Ill. 2d at 106). "The trial court's determination as to who is responsible for the delay of trial is entitled to much deference, and should be sustained in the absence of a clear showing of the trial court's abuse of discretion." *Id.* (citing *Reimolds*, 92 Ill. 2d at 107).

¶ 44    The resolution of this matter requires consideration of this court's decisions in *People v. Roberts*, 133 Ill. App. 3d 731 (1985), and *People v. Collum*, 98 Ill. App. 3d 385 (1981). The right to a speedy trial is a personal right (*People v. Brame*, 6 Ill. 2d 412, 413 (1955)), and it cannot be waived by delays caused by a codefendant (*Roberts*, 133 Ill. App. 3d at 738). Defendant further

12

notes that delays for the purpose of finding conflict-free counsel for a defendant are not generally attributable to the defendant. *Collum*, 98 Ill. App. 3d at 387.

¶ 45    In *Roberts*, the defendant's and his codefendant's charges were joined, and a single public defender, Harold Pennock, was appointed to represent both men. *Roberts*, 133 Ill. App. 3d at 736. Pennock moved to withdraw as counsel after concluding that although no conflict of interest existed between the two men, his contract with Marion County covered only conflicts cases. *Id.* The trial court granted the motion, and another attorney was appointed to represent both men. *Id.* The following day, the second attorney noted a potential conflict of interest between the two men, and Pennock was again appointed to represent the defendant. *Id.* Thereafter, the codefendant filed a motion to sever, and despite the State confessing the motion, the trial court denied the motion to sever. *Id.*

¶ 46    The State then moved to dismiss the codefendant's charges, which was also denied by the court. *Id.* The State took an interlocutory appeal of the denial of its motion to dismiss the codefendant, and on its own motion, the court stayed the proceedings for both men. *Id.* That same date, the State and the defendant both announced that they were ready for trial. *Id.* The defendant later moved for dismissal based upon a speedy-trial violation, which was denied by the trial court. *Id.* Following trial, the defendant appealed the trial court's denial of his motion to dismiss for a speedy-trial violation. *Id.*

¶ 47    This court reversed the defendant's conviction, rejecting the State's argument that the two men were inseparable for speedy-trial purposes since they were tried jointly. *Id.* at 737. This court held that, "[s]ince the right to a speedy trial is a right personal to the accused (*People v. Brame* (1955), 6 Ill. 2d 412, 413, 128 N.E.2d 911, 912), such right may not be waived because of delays occasioned by a codefendant for which the accused was not in any way responsible." *Id.* at 738.

13

Addressing the State's contention that the defendant was partially responsible for the delay that led to Pennock's withdrawal, this court rejected that argument, noting that "where *** counsel withdraws on his own initiative, any resulting delay cannot be charged to defendant." *Id.* (citing *Collum*, 98 Ill. App. 3d at 387).

¶ 48 In *Collum*, the defendant was taken into custody and charged on June 10, 1980. *Collum*, 98 Ill. App. 3d at 385. The public defender was appointed on June 20, 1980, but later filed a motion to withdraw as counsel on August 11, 1980. *Id.* The motion to withdraw apparently alleged that the public defender had a conflict of interest. *Id.* at 387. On August 29, 1980, the motion to withdraw was granted, and on September 16, 1980, new counsel was appointed. *Id.* at 386. Just prior to trial, defense counsel filed a motion to have the defendant discharged on the basis that 132 days had passed since defendant was taken into custody. *Id.* That motion was denied. *Id.*

¶ 49 On appeal, this court noted that this was not a case where the public defender moved to withdraw (1) "at the direction of defendant"; (2) "under circumstances in which defendant acquiesced in the court's statement that the cause was continued on defendant's motion"; (3) "followed by defendant's request that his new counsel be given time to prepare"; or (4) where "defendant becomes disenchanted with defense counsel and seeks a replacement." *Id.* at 387. Rather, this court noted that this was a situation where the public defender sought leave to withdraw "on their own initiative." *Id.* Because the delay was not caused by the defendant, this court concluded that the delay could not be attributed to defendant and reversed the trial court. *Id.* Although *Collum*'s pronouncement that a defendant is not responsible for delays caused when appointed counsel withdraws "on their own initiative" is overly broad, *Collum* clearly stands for the proposition that a defendant is not responsible for the delay caused when his appointed counsel is forced to withdraw due to a conflict of interest.

14

¶ 50    Based on the facts before us, discussion of the Illinois Supreme Court's *Bowman* decision is also warranted. In *Bowman*, the defendant's public defender withdrew due to a conflict of interest. *Bowman*, 138 Ill. 2d at 135. An attorney under contract with Rock Island County to handle conflicts, Fred Kopp, was appointed to represent the defendant. *Id.* After the matter was set for trial, Kopp resigned his position as a conflicts defender, and the new conflicts attorney, Alex Jarrin, was appointed to represent the defendant. *Id.* Due to the backlog of cases and based upon his understanding that the defendant knew that this would cause a delay in the trial date, Jarrin continued the trial without having it set for a specific date. *Id.* Two months later, the defendant sent a letter to the chief judge, stating that he did not want a continuance, that he did not know Jarrin would need more time to prepare for trial, and that he was never told that the continuance would waive his right to a speedy trial. *Id.* at 136. Subsequently, yet another attorney, Richard Coppula, entered his appearance on the defendant's behalf and filed a motion to dismiss the charges based upon a violation of the defendant's speedy-trial rights. *Id.*

¶ 51    The trial court dismissed the charges against the defendant and the appellate court affirmed. *Id.* As explained by our supreme court:

> "The [appellate] court viewed the defendant as being forced to choose between two compromising positions: he could have gone to trial on November 23, 1987, with unprepared counsel, or he could have waived his right to a speedy trial. The appellate court determined that this was the result of actions taken by the attorneys involved and the County of Rock Island, and was not due to any conduct on defendant's part. Thus, any decision made by defendant to waive his right to a speedy trial was made under duress."
>
> *Id.* at 138 (citing *People v. Bowman*, 180 Ill. App. 3d 755, 758 (1989)).

¶ 52    The Illinois Supreme Court reversed the appellate court, finding that the "defendant failed to affirmatively establish *** a violation, and that the trial court erred in its application of the law to the facts." *Id.* Noting that the trial court made no factual determination as to whether defendant approved or acquiesced to the change in attorneys, the *Bowman* court noted that the defendant did not object to Jarrin taking over for Kopp, and that both Jarrin and Kopp testified that defendant agreed to the change. *Id.* at 139. Accordingly, the *Bowman* court determined that the defendant had acquiesced to the delay. *Id.* at 140.

¶ 53    The court then noted that the "appellate court has repeatedly held that the delay a continuance causes is properly charged to an accused where his counsel required more time to prepare for trial." *Id.* This is based, in part, on the general rule in Illinois that a client is bound by the acts or omissions of his lawyer-agent. *Id.* at 141. Consequently, when a public defender requests a continuance on behalf of a defendant, the resulting delay is attributable to the defendant for the purpose of tolling the statutory speedy-trial period. *Id.* This is true even when the motion to continue is made in the defendant's absence. *Id.* at 142.

¶ 54    Applying these principles to the defendant's claim, the *Bowman* court held "that defendant cannot claim that his action, or lack thereof, did not contribute to the delay caused by Jarrin's filing of the motion for a continuance on his behalf." *Id.* at 143. Because a "party who does not promptly repudiate an attorney's unauthorized act upon receiving knowledge of such an act has effectively ratified the act," the court found that the defendant's "delay in objecting to the allegedly unauthorized waiver of his speedy-trial right *** was also a factor contributing to the delay the motion to continue caused." *Id.*

¶ 55    The *Bowman* court also discussed this court's decisions in *Roberts* and *Collum*. *Bowman* distinguished *Roberts* and *Collum* on the basis that the public defenders in both cases were required

16

to withdraw as counsel due to a conflict of interest, meaning that the delay in those cases "was not due to the direct results of the accused's own actions, such as when the accused himself requests that the public defender withdraw." *Id.* at 144. As the *Bowman* court noted, "[w]here an attorney has a conflict of interest with the party he represents, both the attorney and the accused have no choice. The attorney must withdraw, and the accused must obtain another attorney or have new counsel appointed." *Id.* at 145. By contrast, the defendant's first attorney, Kopp, voluntarily withdrew as counsel. *Id.* Since the defendant did not object to Jarrin's representation, but rather only objected to Jarrin's trial strategy (by the filing of the motion to continue), *Roberts* was distinguishable. *Id.* The *Bowman* court acknowledged, however, that "the conclusion of the *Roberts* case is logically sound." *Id.*

¶ 56    Next, the *Bowman* court addressed the appellate court's contention that the series of events placed the defendant in a compromising position: that the defendant could either choose to go to trial with an unprepared attorney or forgo his right to a speedy trial. *Id.* at 147. The *Bowman* court disagreed. The *Bowman* court reasoned that the appellate court's logic placed the defendant in a "no lose" situation: "Had defendant chosen to go to trial on November 23, 1987, and lost, his claim on appeal might have been ineffective assistance of counsel." *Id.* at 148. Recognizing that situations arise where a defendant cannot exercise both his speedy-trial right and his right to effective assistance of counsel, the *Bowman* court noted that a defendant should not be "able to exploit his constitutional right to a competent attorney and escape all charges through the technical application of the speedy-trial statute." *Id.* (citing *United States v. Russo*, 550 F. Supp. 1315, 1321 (D.N.J. 1982)). The *Bowman* court noted that it had previously concluded that "the due process rights of defendants are not denied when they are forced to choose between the two constitutional

17

rights of speedy trial and effective assistance of counsel." *Id.* at 147 (citing *People v. Lewis*, 60 Ill. 2d 152, 156-57 (1975); *People v. Williams*, 59 Ill. 2d 402, 405-06 (1974)).

¶ 57 Turning to the case before us, under these circumstances, we find that *Roberts* and *Collum* control, and that there was no delay attributable to defendant in the continuances. For these reasons, under the facts and circumstances of this case, we find that the trial court abused its discretion by attributing delay to the defendant caused by the court's need to find conflict-free counsel for Simeon. For the foregoing reasons, as defendant was not tried in accordance with section 103-5(a), his charges must be dismissed and he must be discharged from custody. 725 ILCS 5/103-5(d), 114-1(a)(1) (West 2020). Given our disposition, we need not address defendant's remaining claims.

¶ 58                                    III. CONCLUSION

¶ 59 The judgment and sentence of the circuit court of Jackson County is reversed, the matters are dismissed, and defendant is ordered to be discharged.


¶ 60 Reversed, dismissed, and defendant discharged.